344 A.2d 892
**COMMONWEALTH of Pennsylvania**
v.
**Andrew T. ROGERS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1975.

Decided Oct. 3, 1975.

400

Nino v. Tinari, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

## OPINION OF THE COURT

MANDERINO, Justice.

The appellant, Andrew Rogers, was convicted on October 16, 1973, of burglary, aggravated robbery, murder in the first degree, and murder in the second degree, and sentenced to a term of life imprisonment. Post-verdict motions were denied and this appeal followed.

Appellant contends (1) that his motion to suppress certain statements made by him should have been granted because they were the result of an unnecessary delay between his arrest and arraignment; (2) that these statements were not voluntarily given; (3) that his

Fifth Amendment rights were violated at trial; and, finally, (4) that the verdict was against the weight of the evidence. We find no merit in any of appellant's contentions, and affirm the judgment of sentence.

On July 17, 1972, at approximately 1:50 a.m., appellant was arrested without a warrant by officers who had received reliable information to the effect that appellant was implicated in the murders of two women. Appellant was then taken to the Police Administration Building, arriving at 2:05 a.m., the same morning. At 2:24 a.m., after giving the *Miranda* warnings, the police began to interview appellant. This interview lasted from 2:24 a.m., to 4:31 a.m. The questions and answers were noted on paper by one of the interviewing officers. At the conclusion of the interview, appellant signed each page of the notes of the oral statement. At no time during the interview did appellant deny involvement in the crimes; but rather, he freely and explicitly admitted his involvement, giving background and details about the perpetration of the crimes. Thereafter appellant was left to eat, rest, and use the rest room until 8:00 a.m., when he was examined by the police surgeon. Between 8:06 a.m. and 9:22 a.m., appellant was again fed and allowed to rest. At 9:59 a.m., pursuant to a warrant, samples of appellant's head and pubic hair were taken. At 10:30 a.m., also pursuant to a warrant, a blood sample was taken. From 10:38 a.m. to 11:50 a.m., appellant was again fed and permitted to rest. From 11:50 a.m. to 3:25 p.m., a polygraph examination was administered to him. Following the test, he rested until he talked to his wife at 4:15 p.m. At 4:30 p.m., appellant identified property taken from the scene of the crimes. Between 5:00 p.m. and 9:25 p.m., a formal statement was taken from appellant. The statement reiterated the oral statement made earlier, and was signed on each page by appellant. At 9:35 p.m., approximately twenty-one and a half hours after his arrest, appellant was arraigned.

Appellant's initial contention is that his alleged confessions should have been suppressed because they were the product of unnecessary delay between arrest and arraignment. In support of this contention, he cites *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973) and *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973).

All of the cases cited above are clear examples of situations where unnecessary delay produced the challenged statements. In the instant case, however, such a causal relationship between the statements and the delay in arraignment does not exist. Within minutes of reaching the Police Administration Building, appellant gave a clear, detailed report of his role in the crimes of which he was accused. No protestations of innocence were made, and he demonstrated no hesitancy in signing the documents confessing his guilt. While appellant's formal statement was not taken until seventeen hours after his arrest, the record clearly indicates that it contained substantially the same information contained in the initial oral statement. While the delay between arrest and arraignment presented to us in this case was substantial, the record is devoid of any indication that such delay produced any evidence prejudicial to appellant. We find the instant case strikingly similar to *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974). In *Rowe*, the accused made an oral admission soon after his arrival at police headquarters. Seven hours later he reiterated his confession in a formal statement and was then arraigned. On appeal, the accused challenged the admission of his statements on the principles enunciated by this Court in *Futch* and *Tingle*, *supra*. Because the oral statement was made soon after his arrest, and because the formal statement was essentially the same as the oral

statement, we found no prejudice to the accused from the seven hour delay between arrest and arraignment.

Appellant also contends that his statements were not voluntarily given. The issue involves questions of credibility which were determined by both the suppression court and the trial jury as finders of fact. The Commonwealth introduced evidence at the suppression hearing, and at trial, that appellant was given *Miranda* warnings and that his statements were voluntary. Appellant denied this. These issues were resolved against appellant by the suppression court, and these findings are supported by the record. *See Commonwealth v. Rowe, supra.*

Appellant next contends that the prosecution improperly made references in violation of appellant's Fifth Amendment rights not to incriminate himself and contrary to *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972). *Haideman* prohibits the prosecution from exploiting an accused's silence for the purpose of showing guilt. We do not find any such exploitation in the circumstances of this case.

Appellant's complaint concerns the prosecution's use of certain portions of appellant's suppression hearing testimony to impeach his trial testimony. The appellant testified at a pretrial suppression hearing concerning the circumstances under which the police obtained a statement from him after his arrest. At trial the appellant again testified concerning the circumstances under which the statement was obtained. Because appellant's suppression hearing testimony differed from his trial testimony in certain respects, the prosecution confronted him at trial with certain questions and answers from the transcript of his testimony at the suppression hearing. While cross-examining appellant, the prosecution read

the following question and appellant's answer from the suppression hearing transcript:

"Q. Did you give him a statement, or did you refuse to give him a statement?

A. Well, I wasn't reluctant to give him a statement from the beginning until I asked him, you know, what was my wife being held for, and he said that she, she was accompanying me as aiding and abetting."

We fail to see how the above reference involved any exploitation of the appellant's silence. The evidence at this point in the trial was that the appellant *did not* remain silent either when questioned by the police or at the suppression hearing. Neither, of course, did the appellant remain silent at the trial; he testified fully on direct examination as to his version of the circumstances under which the police obtained his statements. We cannot conclude that the reference from the testimony of the suppression hearing concerning whether the appellant gave a statement or refused to give a statement to the police involved any comment concerning silence on the part of the appellant. Appellant chose to testify during the trial and the prosecution was entitled to bring to the jury's attention inconsistencies between the appellant's trial testimony and his suppression hearing testimony. This, of course, is only permissible where no evidence was suppressed. Where evidence has been suppressed, no reference to the suppression hearing is permissible because such a reference would reveal to the jury or permit the jury to speculate about the existence of inculpatory evidence withheld from the jury by the suppression order. If the defendant does not testify at trial, there is, of course, no proper occasion to refer to his testimony at the suppression hearing.

Appellant also complains about one other portion of his suppression hearing testimony with which he was

confronted while on the stand during the trial. The factual context is as follows. During the suppression hearing appellant testified that when questioned by the police following his arrest, he gave an oral statement in which he did not admit involvement in the murders or robbery under investigation, but in which he did give information about when the murders occurred and in which he implicated another person. He said the other person sometimes used the name "George", and at other times used the name "James". He also testified that while in prison, between the time he gave his oral statement to the police and the time of the suppression hearing, he learned from a fellow inmate that the person whom he had mentioned to the police when he was arrested was a man by the name of James Reddin. When the appellant was asked at the suppression hearing the name of the inmate who had supplied him with this information, he replied, "I take the Fifth Amendment."

At trial, appellant testified that he knew nothing about the robbery and murders, and explained his possession of certain property belonging to the victims of the crimes by saying that he was only holding the property temporarily for a friend by the name of James Reddin. On cross-examination of appellant at trial, the prosecution confronted him with that portion of his suppression court testimony just referred to. The appellant now contends that the trial court should have sustained his objection to that portion of the suppression hearing transcript in which the appellant refused to name the inmate who had furnished him with James Reddin's name.

■ ■ While any mention by the prosecution of an accused's invocation of the Fifth Amendment involves a substantial risk that reversible error will occur, we do not believe that reversible error occurred here. The reference to appellant's silence in this case dealt with a very limited bit of information which concerned only the name of a fellow inmate from whom appellant had ob-

tained the complete name of James Reddin. The reading of appellant's invocation of the Fifth Amendment referred to no other matters. Moreover, immediately after this reference was made at trial, the appellant was asked by the prosecution about the identity of the inmate who had supplied him with James Reddin's name, and the appellant explained that he knew the inmate by his first name only. The matter was pursued no further.

*Haideman* proscribes the exploitation of an accused's silence so as to provide an opportunity for the fact finder to infer guilt from the accused's failure to talk about the crime. We do not find that rationale applicable to the circumstances of this case. Here the appellant's silence concerned information which was only remotely connected with the material issues. Furthermore, appellant explained at trial that he only knew the inmate by his first name. We conclude that the error, if any, is not reversible error, and appellant is not entitled to a new trial on that basis. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 705 (1967), *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1967), and *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967).

Finally, appellant contends that the verdict was against the weight of the evidence. The evidence submitted by the Commonwealth was more than adequate to support the convictions obtained. The record contains substantial circumstantial evidence implicating appellant, and appellant himself admitted his guilt in statements properly received into evidence.

Judgment of sentence affirmed.

EAGEN, O'BRIEN and POMEROY, JJ., concurred in the result.