418 A.2d 649

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph A. PALAZZO.**

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed Feb. 1, 1980.

Guy Messick, Assistant District Attorney, Media, for Commonwealth, appellant.

Francis R. Lord, Media, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

* President Judge JOHN Q. STRANAHAN, of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUG-

SPAETH, Judge:

This is an appeal by the Commonwealth from an order dismissing the prosecution as barred by the double jeopardy clause.[1]

Appellee was charged with obstructing the administration of law, tampering with witnesses, and hindering prosecution. He was first tried on these charges before a jury on February 8, 1978, but a mistrial was declared because of the jury's inability to reach a unanimous verdict. A second jury trial began on June 1, 1978, but on the second day of this trial, the trial judge granted appellee's motion for a mistrial. On June 28, 1978, appellee filed a motion to dismiss the prosecution. The motion alleged that "[t]he prosecution [had] . . . intentionally invited or encouraged" the June mistrial, and that a retrial would therefore violate appellee's right against double jeopardy. The lower court agreed, and granted appellee's motion to dismiss the prosecution.

The charges against appellee arose from the arrest of Herman Fontain by Chester Township police officers on July 24, 1976. Mr. Fontain, a political figure in the city of Chester, became abusive with two police officers who had stopped him for a traffic violation. He was placed under arrest, transported to the police station, and charged with disorderly conduct and assaulting a police officer. Mr. Fontain made a telephone call from the station, and a short time later appellee appeared at the station. Appellee was a Chester Township Commissioner. He talked to Mr. Fontain at the station, handed the complaint to one of the officers, and told the officer to hold the papers until he heard from him. He then walked out of the station with Mr. Fontain. No charges were brought against Mr. Fontain.

The incident that led the lower court to grant appellee's motion for a mistrial occurred during the Commonwealth's

ERMAN, of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

1. *See* U.S.Const. Amend. V; *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (double jeopardy clause of fifth amendment is applicable to the states through the due process clause of the fourteenth amendment.)

cross-examination of a defense witness, Ms. Rebecca Gray. Ms. Gray, who lived across the street from the police station, described what she saw on the night in question and stated that it was she who called appellee and asked him to come to the station and investigate the incident. The objectionable cross-examination was as follows:

Q. Now, you recall talking to a representative of the District Attorney's Office, a Mr. Dennis O'Leary?

A. Correct. I beg your pardon?

Q. And he asked you whether or not you could help him out with information concerning this July 24th incident, didn't he?

A. No, he did not.

Q. You deny that? Well, what was it that he asked you?

A. Which time are you talking about when Mr. O'Leary talked to me?

Q. He talked to you twice?

A. Yes.

Q. Let me refer you to the summer of '77 when the investigation of Mr. Palazzo was ongoing. Do you recall him coming—

MR. LORD: I object to the reference of ongoing. It's highly prejudicial. And I ask for a mistrial.

THE COURT: Motion is denied, Mr. Lord.

BY MR. SUWAK:

Q. The first time Mr. O'Leary talked, do you recall that?

A. Uh-huh.

Q. What is it he asked?

A. Mr. O'Leary came to the office where I was working. And the only thing that I can remember him asking in reference to the police department was if I knew of any corruption or any payoffs within—

MR. LORD: I object to this line of questioning. We are trying to interject something into this case which is not involved.

THE COURT: Counsel, please approach sidebar.

(The following occurred at sidebar on the record out of the hearing of the jury.)

MR. LORD: I think we have gone now twice into matters that are extremely prejudicial, an ongoing investigation in 1977. It is just so loaded with implications, that we put something in the jury box that I think could very well taint the minds of the jurors so sufficiently against this defendant that even a presentation of the defense would entitle him to a verdict of acquittal. He might be judged on some other thing that is not before this panel. Now we are going into payoffs and corruption in the Chester Township Police Department through this witness, who is being cross examined by Mr. Suwak. And there is no allegation in this that there is any payoff. There is no allegation of any corruption. There is an allegation of a specific incident.

MR. SUWAK: If the Court please, to the extent that there may be any prejudice, I would submit that an instruction by the Court would be quite satisfactory. I would indicate to the Court that the only thing I am after here is that Mr. O'Leary did talk to this individual about the July 24th incident in the summer of '77. At that time, she told them she couldn't help them out. Those were her precise words.

I will produce Mr. O'Leary to rebut that. I was only drawing her attention to that conversation in the manner that I did—

MR. LORD: The problem is, he is not going at it in a very direct way. He is trying to get a lot of collateral issues to taint it.

MR. SUWAK: I want to set up the rebuttal, that's all. If she would testify truthfully, I wouldn't have to put any rebuttal on. I am asking very open-ended questions of her.

MR. LORD: I don't think you cross examine witnesses to set up rebuttal.

MR. SUWAK: I am trying not to box her testimony. I want her to come forward so it won't be necessary to

impeach her. It's hardly my burden to be responsible for an answer given by a witness. This is an answer I did not expect. I expected that the answer would be truthful. I expected that the answer would be, we talked about that incident.

THE COURT: You don't know whether that's truthful or not. She may be truthful, maybe not.

MR. SUWAK: Maybe my investigator is lying.

THE COURT: That's not an issue. I understand the basis.

MR. LORD: I say with respect to the first statement, the harm was in the question about ongoing investigation. It didn't come—then he goes right back to the same area with the witness, going into payoffs in the Chester Township Police Department.

This jury has to think there is something more in this case than this incident.

I again renew my request for a mistrial. I think it's so prejudicial, I wouldn't want to go to the jury with this kind of taint. We are talking about some other basic scheme of wrongdoing by Mr. Palazzo.

THE COURT: I want to look at some law on this. N.T. June 1, 1978 Trial at 169–172.

After a brief recess the lower court granted the mistrial and dismissed the jury.

 Generally, when a mistrial is granted on a defendant's motion, the principles of double jeopardy do not bar a subsequent prosecution even though the motion for mistrial is prompted by prosecutorial error. *See United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). Where, however, the error is a product of prosecutorial overreaching, a subsequent retrial may be barred. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977); *United States v. Dinitz, supra; Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978); *Commonwealth v. Bolden, supra.*

In *Commonwealth v. Bolden, supra*, two justices of the Supreme Court stated that prosecutorial overreaching sufficient to bar a retrial, as discussed in *Dinitz*, would be found where there had been grossly negligent as well as intentional prosecutorial misconduct. 472 Pa. at 641–42, 373 A.2d at 108–109, *citing, United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976). Applying that rule to the case before them, the justices concluded that the prosecutorial misconduct that had occurred had been neither grossly negligent nor intentional, and that therefore a retrial was not barred.

More recently, in *Commonwealth v. Potter, supra*, Justice POMEROY, in an opinion joined by two other justices, reexamined the opinion in *Bolden*, rejected the gross negligence standard, and instead concluded:

> In sum, the public interest in convicting those guilty of crimes is too important an interest to be subordinated to a concept of a prosecuting attorney's negligence, even though it be labeled "gross"; defendants are adequately protected by the sanction of complete discharge which is imposed when the government's agent acts with the intent to abort the trial. Accordingly, we believe that retrial should be barred when there is found to have been prosecutorial misconduct "intended to provoke mistrial requests," . . . that is to say, when the prosecuting lawyer, judged by an objective standard, must be deemed to have been substantially certain that a mistrial would be declared as a result of his questions to witnesses or other conduct at trial.
>
> 478 Pa. at 267, 386 A.2d at 925 (footnote and citation omitted).

In a separate opinion Justice NIX stated that he agreed with Justice POMEROY's disposition of the double jeopardy claim. *Id.*, 478 Pa. at 287, 386 A.2d at 936 (NIX, J., in support of reversal). *See Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

Justice POMEROY's opinion in *Potter* thus represented the views of four justices of the Supreme Court, and it has since been adopted by three different panels of this court.

*See Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979); *Commonwealth v. Thomas*, 270 Pa.Super. 375, 411 A.2d 767 (1979); *Commonwealth v. Nelson*, 268 Pa.Super. 411, 408 A.2d 854 (1979). Accordingly, this panel is required to apply it to this case.

■ Applying *Potter* to the facts of this case, we conclude that a retrial is not barred, for there is no evidence that the prosecutor sought to abort the trial. Indeed, the lower court stated that "[b]oth lawyers have truly exerted themselves in exemplary fashion in the conduct of questioning and in the conduct of trial", N.T. 38(a), and in its opinion filed pursuant to this appeal, the court states that it would not "label the prosecutor's conduct as being negligent or as being wilful and deliberate." Opinion of the Lower Court at 11.[2]

As evidence that the prosecutor did engage in over-reaching, however, appellee points to the fact that during the first trial, which ended in a mistrial because of the jury's inability to reach a unanimous verdict, the prosecutor had questioned Ms. Gray as follows:

"Q. All right. Now, do you know—in the late summer of 1977 I believe you were contacted by an investigator from the Delaware County District Attorney's Office, Mr. Dennis O'Leary?

A. Yes, I was.

Q. And at that time you recall that he asked you whether or not you had any information with regard to the July 24th and 25th arrest—

A. No, sir.

Q. —of—

A. He did not.

Q. —Herman Fontaine?

A. No, sir. He did not.

Q. You deny that he asked you questions concerning that?

2. This statement by the lower court might be interpreted as a finding that the prosecutor had acted neither negligently nor intentionally. A fairer reading is that the lower court did not believe it necessary to make such a finding and therefore did not do so.

A. Yes, I do.

Q. You deny that you told him that you had no knowledge of those events?

A. Mr. O'Leary did not ask me did I know anything about the arrest of Mr. Fontaine. He asked me did I know anything of any corruption or payoffs in the Chester Township Police Department and my answer to him at that time was no, I did not."

N.T. February 8, 1978 Trial at 291–92.

Later, on rebuttal, the prosecutor had the investigator testify that Ms. Gray had told him that she could not help him in his investigation of the Fontain incident.

Appellee argues that the prosecutor thus knew from Ms. Gray's testimony at the first trial that at the second trial she might give an answer concerning an investigation of bribery in the police department. This argument seems well taken, and undermines, if it does not invalidate, the prosecutor's statement at the second trial that he "did not expect" Ms. Gray's answer. It does not follow, however, that by questioning Ms. Gray as he did, the prosecutor intended to abort the trial. Appellee did not move for a mistrial when Ms. Gray gave the answer at the first trial, nor did he make any objection to her answer. Thus, while we could say that the prosecutor should have known, or did know, that he was risking a prejudicial answer, there is no evidence from which we can conclude that he knew that appellee would move for a mistrial or that his questioning was intended to cause that result.[3] It rather appears that the prosecutor only intended to lay a foundation for rebutting Ms. Gray's testimony, as he had done at the first trial.

The correctness of our conclusion that a retrial is not barred under *Potter* may be seen by considering the actions of the prosecutor in past cases where this issue has arisen.

---

**3.** The lower court distinguished *Potter* from this case on the ground that *Potter* involved a prosecution for murder while this case involved a lesser prosecution. We do not read *Potter* as limited to cases involving serious offenses, nor do we read it as setting forth a balancing test whereby the seriousness of the offense is weighed

In *Potter,* for instance, the prosecutor, over repeated objections by the defendant, which were sustained by the lower court, persisted in a highly inflammatory cross-examination that injected into the record evidence that the defendant had a juvenile record. Justice POMEROY's Opinion in Support of Affirmance nevertheless concluded that this conduct was not evidence of intent to cause a mistrial. In *Thomas* the prosecutor made a reference to the defendant's alleged intimidation of a witness. An objection was sustained to the testimony, the defendant's motion for a mistrial was denied, and the court gave a cautionary instruction. Immediately after that, however, the prosecutor again entered into the same line of prejudicial questioning, and a mistrial was declared. On this appeal this court held that a retrial was not barred as there was no evidence of intent to cause a mistrial. The improper conduct of the prosecutors in *Potter* and *Thomas* was more evidence of intent to cause a mistrial than was the conduct of the prosecutor in this case. *And see Commonwealth v. Perry, supra* (no intent to cause mistrial despite fact that prosecutor on four different occasions improperly referred to evidence that had been suppressed).

Reversed.

against the misconduct of the prosecutor in determining whether a retrial is barred.