422 A.2d 1113

**COMMONWEALTH of Pennsylvania**

v.

**Robert P. MURPHY, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed Nov. 14, 1980.

---

Burton A. Rose, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

Appellant Robert P. Murphy brings this appeal from an order of the court below refusing his motion to dismiss the prosecution on the grounds of double jeopardy. For the reasons which follow, we affirm the order and remand for trial.

On September 14, 1977, appellant, a police officer for the City of Philadelphia, was charged in three Informations with simple assault, aggravated assault, official oppression, and obstructing administration of the law.[1] Trial commenced before a jury on October 16, 1978 and proceeded through October 27, whereupon appellant's request for a mistrial was granted. Facts adduced at trial revealed that in August of 1976, appellant was the next door neighbor of the Trost family in Northeast Philadelphia. There had been some history of enmity between the two families as appellant and his wife had repeatedly complained about the loud and boisterous behavior of the Trosts, including unseemly lewd and noisy parties at all hours of the night. In the early morning hours of August 28, 1976, appellant and several fellow officers arrested the Trost boys and complainant Charles Murray in the Trost home for disorderly conduct. At the Seventh District station, as appellant attempted to interview Murray in connection with the arrest, an altercation erupted between the two. Murray testified that appellant suddenly became infuriated and struck him with a blackjack, while appellant insisted that he only struck Murray after Murray hit him in the face.

The events which precipitated the mistrial were as follows. To buttress the defense position that Murray was the aggressor on the night in question, appellant called Officer Fred Velez who was present in the room wherein the affray occurred. Officer Velez testified on direct examination:

As I was turning around, I observed the other male strike Detective Murphy in the chest, the detective going

1. Crimes Code, 18 Pa.C.S.A. § 2701, 2702, 5301, 5101 respectively.

backwards and instinctively coming right back towards the other male. I seen the other male bounce off or sort of bounce off the wall, his head hitting the wall, and come back at Detective Murphy again. R.R. 1275a.[2]

In order to impeach Officer Velez, the Commonwealth sought to call Officer Leon Hill to whom Velez had allegedly made a prior inconsistent statement. Responding to a defense request for an offer of proof as to what Hill would say, the assistant district attorney told the court:

> [Assistant District Attorney] Hill would say that he went to the 7th District in November sometime and talked to Fred Velez, who showed them the room in which the incident between Murphy and Murray took place. At that time Velez, in describing what occurred, said he heard an altercation, turned around and saw Murphy going back as if he had been pushed or punched in the chest, but he did not see any contact between–he did not see Charles Murray strike Murphy. It's to contradict that.
>
> R.R. 1667–8a.

When Hill was called to the stand, he testified that in November of 1976, he accompanied Assistant District Attorneys Sylvester and Brown to the Seventh District Station to interview Velez in connection with the 8/28/76 incident. Hill related to the jury the substance of Officer Velez's statement at that interview:

> Officer Velez stated that on the night of the occurrence that he was inside the J.A.D. room, completing some paperwork on an arrest that he had made, when Detective Murray—Murphy brought Mr. Murray in. They were seated to the rear of him, and there was a discussion. The discussion got heated.
>
> Just as he turned—he heard a little noise, he turned and he observed Detective Murphy up against the wall with his arm up as though he had been shoved or struck.

---

2. On cross–examination, however, Velez retreated somewhat and admitted that he had not seen Murray's punch actually land on appellant. R.R. 1306–7a. On redirect, he was rehabilitated through a statement given to investigators on September 2, 1976 in which he stated he saw the punch thrown by Murray. R.R. 1334a.

Q. [By Assistant D.A.] Did Officer Velez say whether or not he saw the shove or the punch?

A. He said he did not see the actual contact. R.R. 1847–8a.

After Hill completed his testimony, appellant requested a mistrial. Following two days of arguments and additional testimony bearing on the prosecutor's motives in presenting allegedly prejudicial evidence, the trial court (Guarino, J.) granted a mistrial, finding 1) that Hill's testimony did not contradict Velez; 2) that the prosecutor's offer of proof as to Hill was misleading because the testimony did not conform to the offer; and 3) the only effect of Hill's testimony was to inject into the trial inflammatory and prejudicial evidence. When the Commonwealth sought to commence a second trial, appellant filed his motion to dismiss, which motion was denied by the court below (Marutani, J.).

The Supreme Court has recently restated the proper scope of review in a case such as we have instantly.

Ordinarily, the double jeopardy clause does not bar retrial of an accused where an earlier proceeding is terminated prior to judgment. Retrial is permitted where the trial court, because of manifest necessity, declares a mistrial over the defendant's objection, see *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973); *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972), as well as where a mistrial is granted at defendant's request on the basis of prosecutorial or judicial error. See *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Metz*, 425 Pa. 188, 228 A.2d 729 (1967); *Commonwealth v. Warfield*, 424 Pa. 555, 227 A.2d 177 (1967); *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966). The only exception to the rule permitting retrial is where a defendant's mistrial request is necessitated by prosecu-

torial error committed intentionally to force the accused to move for mistrial, thereby affording the prosecution another, possibly more favorable, opportunity to convict. *United States v. Dinitz,* supra; *United States v. Jorn,* supra; *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Commonwealth v. Gravely,* 486 Pa. 194, 198, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978) (opinion announcing the decision of the Court); *Commonwealth v. Potter,* 478 Pa. 251, 261, 386 A.2d 918, 922 (1978) (opinion in support of affirmance). When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar retrial.

*Commonwealth v. Mitchell,* 488 Pa. 75, 79, 410 A.2d 1232, 1233–4 (1980). Thus, our Court has recently applied the rule that, before retrial is barred, there must be evidence of prosecutorial misconduct *intended* to abort the trial. See, *Commonwealth v. Palmer,* 276 Pa.Super. 473, 419 A.2d 555 (1980); *Commonwealth v. Palazzo,* 275 Pa.Super. 135, 418 A.2d 649 (1980); *Commonwealth v. Perry,* 270 Pa.Super. 412, 411 A.2d 786 (1979); *Commonwealth v. Thomas,* 270 Pa.Super. 375, 411 A.2d 767 (1979); *Commonwealth v. Nelson,* 268 Pa.Super. 411, 408 A.2d 854 (1979).

 Turning to the instant case, we note initially that the propriety of the court's grant of a mistrial is not itself before us. Nonetheless, we feel constrained to observe that our review of the record does not entirely bear out the trial court's factual conclusions. The portions of testimony we have quoted demonstrate beyond doubt that Officer Hill's testimony *did* contradict Velez. While the latter stated on direct that he saw the punch thrown by complainant Murray, Hill's testimony elicited a prior statement by Velez wherein Velez stated he did *not* see the punch thrown. Compare, R.R. 1275a with R.R. 1847–8a. Although Velez qualified his testimony on cross–examination by the Commonwealth, he was rehabilitated on redirect by use of a prior consonant statement. See, fn. 2, supra. In view of the entire effect of Velez's testimony, the Commonwealth was

clearly entitled to show by extrinsic evidence that he had made statements at variance with his testimony on direct and redirect. Henry, Pa. Evidence, § 801 (1953). Further, we cannot agree with the trial court that Officer Hill's testimony was at odds with the Commonwealth's offer of proof. Both the offer and the actual testimony were in accord that Velez did not see the punch thrown by Murray. Finally, the trial court found that the prosecutor had misrepresented in its offer of proof the role which Hill actually played in the Velez interview: Hill was only the driver of the car in which Assistant District Attorneys Sylvester and Brown were transported to the Seventh District and thus Hill was not the actual interviewer. We find nothing in the offer which would indicate Hill's function in the 11/2/76 interview. Moreover, the fact that he was the driver does not materially detract from his testimony as he did hear Velez's statement. Assuming any minor variations between the offer and the actual testimony, we find nothing so egregious as to warrant a mistrial. See, *Commonwealth v. Norman*, 272 Pa.Super. 300, 308, 415 A.2d 898, 902 (1979).

The trial court found that the testimony of Officer Hill only succeeded in placing before the jury inflammatory and prejudicial evidence which warranted a mistrial and it is this evidence which appellant now contends must bar a retrial. We find that, even assuming that the challenged evidence was prejudicial, the record does not support appellant's contention that the prosecutor *intentionally* sought to abort the trial. For example, when asked by the assistant district attorney how he happened to be present when Velez gave the 11/2/76 statement, Officer Hill replied, "At that time I was assigned to the Intelligence Unit, conducting investigations in police brutality—" R.R. 1740a. An immediate defense motion for a mistrial was denied, the court expressing some misgivings that the impact of the phrase "police brutality" could be erased from the jurors' minds. Even assuming the phrase was prejudicial, compare, *Commonwealth v. Dalahan*, 262 Pa.Super. 615, 623, 396 A.2d 1340, 1343 (1979) (officer's statement that he was on "special

duty" to investigate "rash of burglaries", held, not reversible error), there was simply no evidence that the prosecutor intentionally injected this taint into the trial.[3] See, *Commonwealth v. Perry*, supra (reference by officer to suppressed evidence, held, not intentionally elicited by prosecutor, the Court observing that "the error resulted from a lack of communication between the police and prosecutor").

Appellant also alleges error in Hill's statement on redirect:

> I think the purpose of the trip [to the Seventh District on 11/2/76] was for the D.A. to go over Velez's statement, because they wanted to hear it, and it was believed that it was different. When Velez gave that statement, it was such a shock it was noteworthy. R.R. 1878a.

By injection of the word "shock", appellant argues, Hill effectively took from the jury the issue of whether Velez in fact gave inconsistent versions of the incident. However, the prosecution was merely attempting to bolster Hill's ability to recall the interview since defense counsel had, on cross–examination, challenged Hill's powers of recollection. Moreover, the fact that Hill referred to a "statement" by Velez when, in fact, no written statement was then in possession of the D.A., did not warrant a mistrial. It was shown that Assistant District Attorney Sylvester interviewed Velez in her office shortly before the 11/2/76 meeting at the Seventh District and that this second interview was for the sole purpose of reviewing the first. R.R. 2135a, 2136a, 2139–2140a. Thus, Hill's testimony referring to a "statement" was not without a basis in fact.

This record is simply devoid of any suggestion that the prosecutor intentionally provoked appellant into a mistrial. The prosecutor vigorously, for two days of argument, opposed the grant of a mistrial and was assisted at one point by the chief of the district attorney's appeals unit. The prosecutor repeatedly stated that he wished the trial not be

3. At sidebar, the prosecutor stated he had expected Hill to say that he was substituting for another detective who was assigned to investigate the complaint against appellant. R.R. 1743a.

aborted and that the case be submitted to the jury for a verdict. R.R. 2253a; 2261a; 2283a. In view of such conduct, we can hardly say that the Commonwealth was seeking a mistrial in order to avail itself of "another, possibly more favorable opportunity to convict." *Mitchell,* supra. Finding nothing in this record which will bar a retrial, we will affirm the lower court's order denying appellant's motion to dismiss.

Order affirmed and case remanded for trial.