430 A.2d 655

**COMMONWEALTH of Pennsylvania**

v.

**Leroy CLARK, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Nathan OWENS, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Submitted Dec. 6, 1979.

Filed May 22, 1981.

382

C. Van Youngman, Philadelphia, for appellant in case no. 83.

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant in case no. 265.

Steven Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee in case no. 83.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee in case no. 265.

Before PRICE, WATKINS and HOFFMAN, JJ.

PRICE, Judge:

■ On October 11, 1977, appellants, Nathan Owens and Leroy Clark, were arrested and charged with robbery, aggravated assault, criminal conspiracy and the possession of an instrument of crime. A joint jury trial was commenced before the Honorable Berel Caesar on April 10, 1978. On April 11, 1978, a mistrial was granted at the urging of both appellants due to a prejudicial question asked by the assistant district attorney, and the jury was dismissed. Thereaft-

er, both appellants filed a motion to dismiss the informations on double jeopardy grounds.[1] On January 5, 1979, a hearing was held before the Honorable William M. Marutani and the motions to dismiss were denied. This appeal followed.[2]

Both Owens and Clark assert that their retrial is barred by the double jeopardy clause because the improper conduct of the prosecutor forced them to move for a mistrial.[3] We disagree and, therefore, affirm the trial court's order denying appellants' motions for discharge.

At trial, the Commonwealth called as its first witness, Deana Rivers, an eyewitness to the robbery of Belinda's Lounge, a bar located at 6301 Wister Street in Philadelphia. On direct examination, she testified with certainty as to the details of the robbery and identified appellants as the perpetrators. Miss Rivers was then vigorously cross-examined for nearly one and one-half days in a studied effort by both defense counsel to point out differences between her testimony at the preliminary and suppression hearings and her testimony at trial. Throughout the entire period of cross examination, defense counsel referred to the suppression hearing by date only.[4] On redirect examination, however, the prosecutor was not as circumspect:

1. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court held that the double jeopardy clause of the fifth amendment was binding on the states through the due process clause of the fourteenth amendment.

2. An order denying a pretrial motion to dismiss on double jeopardy grounds is immediately appealable. *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980); *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion).

3. Appellant Clark specifically argues that double jeopardy principles preclude a reprosecution where prosecutorial misconduct was designed to provoke a mistrial request. Appellant Owens argues, on the other hand, that either intentional or grossly negligent misconduct resulting in a mistrial is forbidden. *See* note 9 and accompanying text *infra*.

4. As a result of the three and one-half day suppression hearing, the trial court granted appellant Clark's motion to suppress physical evidence obtained as a result of his arrest and his subsequent identification at detective headquarters. Appellant Owens' motion to suppress was denied.

Q. [Assistant District Attorney] Ma'am, did you identify the two men who robbed you at the preliminary hearing?

A. [Miss Rivers] Yes.

Q. Did you identify them during the suppression hearing?

A. Yes.

Q. Did that hearing take three days?

A. Yes.

Q. And are those the same men that you have identified here today in this courtroom?

A. Yes.

(N.T. 342). Appellants' counsel then moved for a mistrial on the ground that any reference to "suppression hearing" could convey to the jury by reasonable implication the existence of additional inculpatory evidence. Following a side bar conference, the court agreed that the single reference to appellants' suppression hearing involved a substantial risk of reversible error. Although the court offered to instruct the jury to disregard the question, defense counsel opposed any curative instruction. Judge Caesar thereupon resumed the trial, holding the mistrial motions under advisement. After extended argument during a court recess, Judge Caesar finally granted the mistrial.[5]

■ The double jeopardy clause of the fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.[6] This constitutional guaranty against double jeopardy protects a defendant in a criminal proceeding against multiple punishments or successive prosecutions for the same offense. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d

5. The trial court cited *Commonwealth v. Rogers*, 463 Pa. 399, 344 A.2d 892 (1975) and *Commonwealth v. Willie*, 246 Pa.Super. 400, 371 A.2d 899 (1977), as persuasive authority for its conclusion that the prosecution's reference to "suppression hearing" warranted the declaration of a mistrial. *See* note 17 *infra.*

6. *See also,* Pa.Const. Art. I, § 10.

651 (1977). The Supreme Court has explained that this policy of finality in criminal proceedings is underlaid by the idea that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

The double jeopardy proscription does not mean, however, that the government is barred from retrying an accused every time an earlier proceeding is terminated prior to judgment. *See Illinois v. Sommerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). As Justice Pomeroy wrote, "societal interests militate against a literalistic reading of the Double Jeopardy Clause." *Commonwealth v. Potter*, 478 Pa. 251, 258, 386 A.2d 918, 921 (1978) (Pomeroy, J., Opinion in Support of Affirmance). To be sure, a balancing of the interests at stake is essential for determining whether retrial, following the declaration of a mistrial, constitutes double jeopardy. Retrial is permitted, for example, where a mistrial is declared by the trial court *sua sponte* over a defendant's objection because of manifest necessity, or the ends of public justice would otherwise be defeated.[7] *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980) (Per Eagen, C.J.); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975). In fashioning this rule, the Supreme Court determined that the public's interest in prosecuting those guilty of crimes would be frustrated

7. Reasons that constitute "manifest necessity", and thus justify the discharge of a jury without placing a defendant twice in jeopardy, include: (1) the inability of a jury to agree on a verdict or, (2) illness of the judge, the accused, or a juror requiring the absence of any item from the pending proceedings. *See* 21 Am.Jur.2d *Criminal Law* § 194 *et seq.* (1965).

if a defendant's double jeopardy interests were allowed to outweigh the powers of a court to retry him when unforeseeable circumstances have arisen during trial that makes its completion impossible. *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949).

This type of double jeopardy question, however, is not present in the case *sub judice*. As we have noted, the mistrial had been granted at appellants' request. Quite different considerations obtain when a mistrial is ordered on defendant's motion because of prosecutorial or judicial impropriety. *See Illinois v. Sommerville*, 410 U.S. at 464, 93 S.Ct. at 1070; *Commonwealth v. Meekins*, 266 Pa.Super. 157, 162, 403 A.2d 591, 594 (1979). Nevertheless, as with *sua sponte* declarations of mistrial, this type of double jeopardy claim can only be .properly disposed of by analyzing a defendant's valued right to have his trial completed by the jury first impaneled and the public's countervailing interest in prosecuting those guilty of crime. In applying this analysis the Supreme Court has held that, when a mistrial is granted at the defendant's request, the double jeopardy bar does not arise until misconduct on the part of the judge or prosecutor amounts to overreaching. *See Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Thus, it is when the integrity of the judicial proceeding breaks down that the burdens incident to reprosecution are deemed to outweigh the public's interest in prosecuting those plainly subject to prosecution. As the Supreme Court has stated: "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079.

The Supreme Court has delineated on several occasions two principal types of prosecutorial overreaching: (1) prosecutorial misconduct intentionally calculated to trigger

the declaration of a mistrial in order to secure a more favorable opportunity to convict an accused; and (2) prosecutorial misconduct undertaken in bad faith to harass an accused by successive prosecutions or prejudice his prospects for an acquittal. *See Divans v. California,* 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977) (Rehnquist, J.); *Lee v. United States, supra; United States v. Dinitz, supra.* Pennsylvania decisions have determined that those forms of overreaching forbidden by the double jeopardy clause of the federal constitution as interpreted by the United States Supreme Court will likewise bar a defendant's reprosecution under state law when he has successfully moved for a mistrial on prosecutorial misconduct grounds.[8] *See Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980); *Commonwealth v. Lee,* 490 Pa. 346, 416 A.2d 503 (1980). In *Commonwealth v. Starks, supra,* our supreme court held that prosecutorial misconduct rising to the level of overreaching will bar retrial only if the specified misconduct is attributable to a bad faith effort to prejudice the defendant or an intent to provoke a mistrial. 490 Pa. at 343, 416 A.2d at 501.[9]

**8.** Similarly, when a defendant *unsuccessfully* moves for a mistrial on the basis of prosecutorial misconduct but then has his verdict set aside on appeal, the double jeopardy clause will bar retrial if the misconduct constitutes overreaching. *See Commonwealth v. Starks,* 490 Pa. 336, 340, 416 A.2d 498, 500 (1980); *Commonwealth v. Potter,* 478 Pa. at 259–60, 386 A.2d at 921 (Pomeroy, J., Opinion in Support of Affirmance); *Id.,* 478 Pa. at 282, 386 A.2d at 933 (Roberts, J., Opinion in Support of Reversal).

**9.** In *Commonwealth v. Starks, supra,* the Pennsylvania Supreme Court set forth an authoritative standard for overreaching cases where none previously existed. *See e. g., Commonwealth v. Mitchell,* 488 Pa. 75, 410 A.2d 1232 (1980) (Per Eagen, C.J., with two Justices concurring and three Justices specially concurring); *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979) (Per Eagen, C.J., with one Justice concurring and three Justices concurring in two separate opinions); *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978) (equally divided court). It is true, of course, that Justice Pomeroy's opinion in *Potter, supra,* technically embodied a majority standard to be applied in such cases; *viz,* that retrial should be barred when prosecutorial misconduct intended to provoke a mistrial is present. *See Commonwealth v. Palazzo,* 275 Pa.Super. 135, 418 A.2d 649 (1980); *Commonwealth v. Thomas,* 270 Pa.Super. 375, 411 A.2d 767 (1979); *Commonwealth v. Nelson,* 268 Pa.Super. 411, 408 A.2d 854 (1979). However, in the wake of *Potter* there was

The Commonwealth is thus barred from retrying a defendant after a mistrial has been granted at his request if the defendant can successfully prove the requisite intentional or bad faith misconduct. *See Commonwealth v. Thomas*, 270 Pa.Super. 375, 378, 411 A.2d 767, 769 (1979). *Accord, Commonwealth v. Palazzo*, 275 Pa.Super. 135, 418 A.2d 649 (1980); *Commonwealth v. Nelson*, 268 Pa.Super. 411, 408 A.2d 854 (1979). On review of a pretrial motion to dismiss on double jeopardy grounds, this court will affirm the order entered below unless the record supports a finding of prosecutorial overreaching. *Commonwealth v. Perry*, 270 Pa.Super. 412, 416, 411 A.2d 786, 788 (1979). In assessing the degree of any asserted impropriety, we direct our attention "to the sequence of events and the exact language used by the parties and the trial court." *Commonwealth v. Potter*, 478 Pa. at 268, 386 A.2d at 926 (Pomeroy, J., Opinion in Support of Affirmance).

Before turning to the facts of this case, however, we note that intentional or bad faith overreaching is not only difficult to prove, but also capable of arising in an endless variety of circumstances.[10] Accordingly, we are convinced

still lingering doubt whether bad faith misconduct intended to deny an accused his constitutional right to a fair trial would bar reprosecution. *See Commonwealth v. Potter*, 478 Pa. at 277, 282–83, 386 A.2d at 930–31, 933–34 (Roberts, J., Opinion in Support of Reversal); *Commonwealth v. Gravely*, 486 Pa. at 210, 404 A.2d at 1303 (Roberts, J., concurring). *But see Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979). Although Justice Pomeroy assiduously drew on the authority of *Dinitz, supra*, and *Lee, supra*, to fashion a double jeopardy rule turning on *intentional or bad faith* misconduct, he concluded that retrial should be barred only if the prosecutor's misconduct was specifically intended *to force the accused to request a mistrial.* The decision in *Starks* has finally dispelled any confusion as to what types of overreaching will bar retrial, as well as any uncertainty that misconduct amounting to overreaching does not include the concept of negligence, or even gross negligence. *Accord, Commonwealth v. Africa*, 281 Pa.Super. 419, 422 A.2d 539 (1980); *Commonwealth v. Perry, supra.*

10. *E.g., Commonwealth v. Starks, supra* (new trial granted on basis of prosecutor's closing argument expressing personal belief as to the voluntariness of defendant's confession and unnecessarily emphasizing involvement of drugs); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979) (mistrial granted due to prosecution witness'

that it is appropriate to fashion guidelines that will maintain tolerable consistency in protecting defendants from deliberate prosecutorial misconduct. Thus, we hold the following circumstances to be relevant in determining the existence of bad faith intent on the part of the prosecution: (1) the absence of any actions undertaken by the prosecutor to preserve the trial and to enhance the defendant's prospects for a fair trial after the misconduct occurred, (2) the absence of either abundant or convincing evidence of the defendant's guilt, so that the prosecutor's misconduct might reasonably be perceived as an attempt to rescue an inadequate prosecution, (3) the absence of misconduct causing serious and incurable prejudice to the defendant, (4) the absence of any neutral explanations, including inexperience, trial strategy, or inadvertence on the part of the government, to show that it did not, in fact, act purposely, (5) observations of the trial judge concerning the prosecutor's motives, and (6) defiance by the prosecutor of any direct order or clear admonition by the trial court to refrain from specific conduct prejudicing the defendant's prospects for acquittal.

In challenging the propriety of the trial court's order dismissing their pretrial motion to dismiss on double jeopardy grounds, appellants argue that the prosecutor engaged in intentional misconduct to provoke a mistrial by referring to their suppression hearing. As evidence of such intent, appellants stress the following facts. Immediately after the jury had been impaneled and just prior to the trial's onset, the prosecutor asked that bench warrants be issued for two Commonwealth witnesses who had failed to appear. The trial judge denied the request because the witnesses had not

mention of polygraph examination results during cross-examination); *Commonwealth v. Nelson, supra,* (mistrial granted where assistant district attorney conducted guilty plea colloquy of co-conspirator in presence of newspaper reporters and judge presiding over defendant's non-jury trial read published account); *Commonwealth v. Thomas, supra* (mistrial granted after prosecutor asked eyewitness if he had been shot at subsequent to testifying at a preliminary hearing and if he had been offered police protection); *Commonwealth v. Meekins,* 266 Pa.Super. 157, 403 A.2d 591 (1979) (mistrial granted on basis of complaining witness' recalcitrant and obstreperous behavior).

been properly subpoenaed. The prosecutor thereupon requested a twenty-four hour continuance which was likewise denied. However, a delay in the start of the trial caused by ancillary matters [11] provided the prosecutor with sufficient time to locate the complainant, Deana Rivers. Before proceeding with its case-in-chief, the Commonwealth requested additional time for Miss Rivers to be prepared. The trial judge allowed the prosecutor only ten minutes to caution the witness against referring to any evidence that had been ruled inadmissible.

The trial finally began and on direct examination, Miss Rivers testified concerning the robbery's commission and appellant's participation therein. During the course of extensive cross-examination, however, Miss Rivers' direct testimony was impugned and, at a side bar conference following this examination, appellant Owens' counsel advised the court that she would be moving for the admission of prior inconsistent statements. The prosecutor severely objected to the introduction of any of the witness' preliminary or suppression hearing testimony. Nevertheless, the trial court ruled that those portions of Miss Rivers' prior testimony which were inconsistent with her testimony at trial could be read to the jury. In response to this adverse ruling, the prosecutor asserted:

> What the Court is doing is permitting defense counsel to take the inconsistencies, whether minor or major, and put all of them together and reiterate them again to the jury strictly from the defense side, thereby prejudicing and presenting unbalanced, biased testimony to the jury.
>
> . . . .
>
> It's never been done that way. I have had this in hundreds of jury trials and it's never been done. There is no judge in City Hall who would permit that.

11. The prosecutor had requested that one of the sequestered jurors be discharged since the juror's husband had been arrested while attempting to contact her. In addition, there was discussion concerning the scope of the trial court's suppression order.

(N.T. 304–05). Following brief additional cross-examination of Miss Rivers by appellant Clark's counsel, the prosecutor re-directed. Almost immediately, the prosecutor committed the offending reference to "suppression hearing". (N.T. 342). *See* text accompanying note 4 *supra.*

 It is appellants' contention that this sequence of events inferentially proves that, by infecting the proceedings, the prosecutor deliberately sought to goad the defense into requesting a mistrial. Specifically, they argue that, since the Commonwealth's case was not progressing favorably, the prosecutor precipitated the mistrial in order to gain a second, perhaps more favorable, opportunity to convict. We disagree. Although a defendant is not required to present direct proof of intentional or bad faith overreaching, these events standing alone simply do not suggest an intent to provoke a mistrial.

 Mindful of those circumstances which previously have been identified as relevant for gauging prosecutorial misconduct,[12] we proceed to an examination of the record. After the reference to "suppression hearing", there ensued extensive discussion out of the jury's presence during which the prosecutor vigorously opposed appellants' application for a mistrial.[13] He argued that although a passing reference to "suppression hearing" could constitute error, an inflexible rule requiring mistrial need not apply since a cautionary instruction warning the jury to disregard such a statement would cure any taint that occurred. It is equally important to note that before exercising his discretion to grant the mistrial motions, the trial judge observed that, in mentioning the suppression hearing, the prosecutor "did not raise his

12. *See* note 10 and accompanying text *supra.*

13. In the midst of this protractive discussion, the prosecutor even requested his office to research the necessity, under the circumstances, of a mistrial declaration. (N.T. 354). Indeed, when the trial court was finally prepared to rule, he submitted an abbreviated memorandum with cases supporting his argument. (N.T. 381).

voice . . . [or] show any unusual emotionality."[14] (N.T. 352). This characterization is also supported by the prosecutor's statement almost immediately following the disputed reference, that "even now I do not recall saying the words 'suppression hearing.' " (N.T. 353). In light of these circumstances, the record is convincing that any impropriety which occurred was attributable to sheer inadvertence and not overreaching caused by the prosecutor's fear that the jury was likely to acquit.[15]

In our view, any remaining doubt whether the prosecutor's misconduct was designed to cause a mistrial is dispelled by two additional considerations. First, we disagree with appellants' assertion that the prosecutor's case had been proceeding badly prior to the mistrial's declaration. Conced-

14. The trial judge further stated that had he "been a member of the jury, [he] would not have attributed any special significance to the tone of voice or in the way in which the question was put." (N.T. 353).

15. Appellants argue that it is improper to rely on a prosecutor's apparent resistance to a mistrial motion in determining if he intentionally sought to abort a trial since this places him in a comfortable "no-lose paradigm." If the prosecutor argues against a mistrial but loses, he successfully avoids any double jeopardy bar to reprosecution by negating the inference of its deliberate provocation. On the other hand, should the mistrial motion be denied, the jury has been exposed to error which prejudices a defendant's right to a fair trial. We disagree since the test to be applied in overreaching cases prevents such a possibility. That test, first articulated by the supreme court in *Starks, supra,* is two-pronged. Accordingly, our inquiry into any charge of prosecutorial manipulation does not cease when it is determined that the specified misconduct cannot be considered an attempt to provoke a mistrial. We must also determine if the specified misconduct amounts to a bad faith effort to prejudice— which is precisely the type of prosecutorial overreaching implicated by the reverse side of appellants' suggested "no-lose paradigm."
 Applying this part of the *Starks* test to the instant case, it must be concluded that here, too, the prosecutor's statement did not constitute overreaching. We simply cannot hold on this record that a passing reference to appellants' suppression hearing was so abhorrent as to suggest a bad faith attempt to prejudice the jury. *See* note 17 and accompanying text *infra.* As Judge Marutani aptly stated in his opinion refusing to dismiss the informations, if he was to ascribe to the prosecutor "a deliberate effort to inject into his case a poisonous element which would assure the conviction of the defendants, this hardly would seem to be the one."

edly, the objective circumstances of the court proceeding indicate that the prosecutor's will had been frustrated at almost every turn. However, it does not follow that the prosecutor intentionally sought to abort the trial in fear that an acquittal might result. The evidence presented by Deana Rivers concerning appellants' participation in the robbery was clear and convincing. Only peripheral differences were pointed out on cross-examination between her testimony at the preliminary and suppression hearings and her testimony at trial.[16] Moreover, Miss Rivers was only the first of several eyewitnesses the Commonwealth intended to have testify. The record simply does not support the view that the prosecutor's specific reference to "suppression hearing" was an attempt to gain the tactical advantage of a second trial by prematurely terminating the first.

 Second, not every reference to a defendant's suppression hearing is so inherently prejudicial as to per se require the grant of a mistrial. Our purpose in stating such is not to show that the trial court abused its discretionary power to declare a mistrial.[17] Rather, we mean to conclude

**16.** Even after having ruled that Miss Rivers' prior inconsistent statements could be read to the jury, Judge Caesar remarked to the prosecutor that there were places in the record testimony of the prior hearings where she apparently rehabilitated herself. (N.T. 306, 319–21).

**17.** The trial court relied principally on *Commonwealth v. Rogers*, 463 Pa. 399, 344 A.2d 892 (1975) and *Commonwealth v. Willie*, 246 Pa.Super. 400, 371 A.2d 899 (1977), in deciding that appellants were entitled to a mistrial because of the prosecutor's single reference to "suppression hearing." In relevant part, Judge Caesar stated that in view of the express language of those decisions, "I believe that we are staring right now down the barrel of a likely reversal if, in fact, this case reaches that stage." (N.T. 393).

In *Commonwealth v. Rogers, supra,* the supreme court held, *inter alia,* that reference from the testimony of a defendant's suppression hearing concerning whether he gave or refused to give a statement to the police was not an improper exploitation of his right to remain silent when he chose to testify at trial. 463 Pa. at 405, 344 A.2d at 895. Indeed, the supreme court noted that the prosecution is generally permitted to bring to a jury's attention inconsistencies between a defendant's trial testimony and his suppression hearing testimony. However, in obiter dictum, the court stated that "[w]here evidence has been suppressed, *no reference to the suppression hearing is*

that when there is no prosecutorial error sufficient even to have caused a mistrial, *a fortiori*, there can be nothing remotely approaching the prosecutorial overreaching forbidden by the double jeopardy clause. The absence of serious prejudice to a defendant, or at least prejudice substantially certain to result in a mistrial, negates any inference of intent to terminate the proceedings. Our review of the record reveals that this is not an instance where the solitary reference to "suppression hearing" resulted in the kind of prejudice that a cautionary instruction could not have cured.

permissible because such a reference would reveal to the jury or permit the jury to speculate about the existence of inculpatory evidence withheld from the jury by the suppression order." *Id.* (emphasis added).

In *Commonwealth v. Willie, supra,* this court held that the disclosure of a *suppressed identification* constituted reversible error warranting a new trial since: (1) any other result would vitiate an accused's rights under Pa.R.Crim.P. 323; and (2) in the circumstances of the case, the identification testimony at trial was not so overwhelming as to eliminate the possibility that the suppressed identification reasonably may have contributed to the guilty verdict. 246 Pa.Super. at 407, 371 A.2d at 902. In reaching this result, the majority relied in part upon the decision in *Rogers*—although that case admittedly only "dealt with the possible exploitation of the defendant's refusal to make a statement and the defendant's suppression testimony." *Id.,* 246 Pa.Super. at 406, 371 A.2d at 902. Pertinently, this court stated, "If no reference to the suppression hearing itself is permissible, then obviously any reference to suppressed evidence must be similarly proscribed." *Id.,* 246 Pa.Super. at 407, 371 A.2d at 902.

Because the statements in *Rogers* and *Willie* are dictum at best, we question their precedential value in support of the proposition that any testimonial reference to an accused's suppression hearing is absolutely forbidden. Moreover, we cannot equate the mere passing reference to an accused's suppression hearing with those violations, such as lack of counsel or coerced confession, which require an inflexible rule of reversal. Only where there has been prejudice *as a result* of the reference is there a risk of reversible error. *Cf. Commonwealth v. Jackson,* 263 Pa.Super. 183, 397 A.2d 807 (1979) (defendant is not entitled to a new trial after improper introduction of a photograph or reference thereto unless, in a particular case, there is reasonable doubt that such error influenced the jury's verdict of guilt). *See generally Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680, *appeal dismissed,* 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974) (defendant is not entitled to a perfectly conducted trial so long as he has been accorded a fair trial by an impartial jury). Therefore, not every reference to an accused's suppression hearing warrants the declaration of a mistrial.

Accordingly, we reiterate our earlier finding that the prosecutor did not engage in purposeful misconduct designed to trigger a mistrial.

■■■ This is not to say that we condone the prosecutor's conduct. If common sense did not alert him to the danger of explicitly referring to appellants' suppression hearing, certainly defense counsel's sustained effort to mention it by date only should have put him on notice. Nonetheless, the prosecutorial misconduct in this case does not require the extreme sanction of complete discharge. Even if the prosecutor's inadvertence could be attributed to an excess of zeal, this would not constitute overreaching as proscribed by the double jeopardy clause. Only when the Commonwealth has engaged in either intentional or bad faith misconduct must society's interest in punishing criminals give way to a discharge of the accused.[18]

For the foregoing reasons, we affirm the order dismissing appellants' claim of double jeopardy on the informations filed against them.

HOFFMAN, J., files a concurring opinion.

HOFFMAN, Judge, concurring:

I agree with all but two aspects of Judge PRICE's excellent and well-reasoned opinion. First, I do not consider "the

---

18. Appellant Clark also argues that due process of law was violated when the same prosecutor who appeared at trial was permitted to represent the Commonwealth at appellants' pretrial motion to dismiss. We disagree. Judge Marutani stated emphatically that he would disregard anything the prosecutor might aver at argument that went beyond the trial record. (N.T. 40–42, January 5, 1979). Moreover, the prosecutor advised defense counsel that he was available to testify should his testimony be required. (N.T. 50, January 5, 1979). Under no interpretation of these facts can appellant Clark demonstrate prejudice sufficient to constitute a denial of due process.

Finally, appellant Clark argues that he should be discharged since, in evaluating the prosecutor's conduct, Judge Marutani erroneously applied the "intentional or grossly negligent" standard set forth in *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). We consider this claim to be equally meritless. If anything, appellants benefitted by the misapplication of this more lenient standard.

absence of any action undertaken by the prosecutor to preserve the trial and to enhance the defendant's prospects for a fair trial after the misconduct occurred" to be a relevant factor in determining the existence of bad faith intent on the part of the prosecutor. Majority op. at 661. I believe that a prosecutor's urging that a mistrial not be granted *after* he has engaged in misconduct is totally irrelevant in determining whether he intended to provoke a mistrial or engaged in a bad faith effort to prejudice the defendant. Moreover, reliance on such a factor may encourage prosecutors whose deliberate misconduct provokes a motion for a mistrial to attempt to prevent a successful double jeopardy claim by vigorously arguing that a mistrial should not be granted.

My other disagreement with the majority concerns the necessity of deciding whether a prosecutor's mere reference to a suppression hearing is a proper basis for granting a mistrial. As the majority notes, the question of whether the trial court abused its discretion in granting a mistrial is not before us; the issue is whether the double jeopardy clause forbids retrial. Although I have no objection to the propriety of considering whether the prosecutor's misconduct seriously prejudiced appellants, I would not decide whether a mistrial should have been granted in this case. See *id.*, majority op. at 663 n.17. Because that issue is not before us, I believe that this is an inappropriate case to decide whether the dictum in *Commonwealth v. Rogers*, 463 Pa. 399, 344 A.2d 892 (1975), which was quoted with approval in *Commonwealth v. Willie*, 246 Pa.Super. 400, 371 A.2d 899 (1977), should be followed. With the above-stated qualifications, I join in the majority opinion.