## Commonwealth v. Perna

*Paul H. Millin, assistant district attorney,* for the commonwealth.

*R. Paul Rockwell,* for defendant.

WOLFE, *P.J.,* September 19, 1989 — Defendant has petitioned for pretrial relief, seeking suppression of the results of a chemical test of his blood for ingestion of drugs.

The Pennsylvania State Police arrested defendant following his involvement in a motor vehicle accident when the officer found defendant in his vehicle in a semi-conscious state and incoherent to some degree. Suspecting operation while under the influence of alcohol, the officers transported defendant to the police barracks, and with the consent of defendant performed an intoxilyzer examination which showed no alcohol in defendant's system. Thus, suspected of possible use of drugs, defendant was transported to the Titusville Hospital where he was subjected to a blood extraction which was examined by Dr. Nathan Scanzillo, Ph.D., director of Clinical Pathology Institute in Erie, Pennsylvania. At the hearing Dr. Scanzillo testified that

defendant's blood contained drugs. He also testified he tested a urine specimen from defendant taken at the hospital which also revealed the presence of a controlled substance. Dr. Scanzillo stated it was not possible to make any quantitative measurement[1] of the controlled substance using only the urine test as such analysis cannot establish impairment or condition of intoxication at any particular time. Dr. Scanzillo also acknowledged his laboratory was not approved by the Department of Health, and indeed, no laboratory in the commonwealth has been approved as yet by the department to perform chemical tests of the blood pursuant to section 1547 of the Motor Vehicle Code. He did express the opinion, however, that defendant was under the influence of a controlled substance to the degree that would render defendant an unsafe operator. This testimony was given over the objection of defendant and request for suppression.

Section 1547, under the General Rule, deems any operator in the Commonwealth of Pennsylvania to have given consent to submit to one or more chemical tests of breath, blood or urine for the purpose of determining the alcohol content of the blood or the presence of a controlled substance if there is reasonable grounds by a police officer to suspect the person has been driving, etc., a motor vehicle. Section 1547(c)(2) provides:

"Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose, using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, a qualified person means an

---

1. A chemical analysis designed to determine the amounts or proportion of the components of a substance or mixture.

individual who is authorized to perform these chemical tests under the Act of September 26, 1951 (P.L. 1539, no. 389), known as the Clinical Laboratory Act."

Dr. Scanzillo stated he was qualified to perform the tests under the Clinical Laboratory Act, but there has been no laboratory established and approved by the Department of Health as the act provides. He did state, notwithstanding, he has testified in other courts as to his opinion of controlled substances in an operator's blood.

As defendant argues, Dr. Scanzillo's testimony is consistent with the notice published in the Pennsylvania Bulletin, volume 19, no. 12, March 25, 1989, which therein the Secretary of the Department of Health states, "The Bureau of Laboratories will, at a later date, establish a list of laboratories approved to conduct quantitative drug determinations in blood and publish it semi-annually in the Pennsylvania Bulletin."

Defendant argues that notwithstanding a controlled substance appearing in the urine of a defendant, under the testimony of Dr. Scanzillo, it is not possible to give a quantitative measure of the amount of controlled substance using only the urine test. In addition, because the laboratory performing the test was not approved, the results of the blood testing showing controlled substance should be suppressed.

We are constrained to agree. The Motor Vehicle Code is statutory in origin and in degradation of the common law, and we are thus therefore bound by its mandates. It is also apparent the Department of Health has taken exclusive authority to license laboratories using standards set by the department for this purpose. Thus, it is the duty of the commonwealth, before utilizing the results of the testing for use of controlled substance, to prove beyond a

reasonable doubt the laboratory doing the test was in fact licensed. Obviously, if no laboratories exist the commonwealth cannot meet this burden; however, this does not mean the court is therefore at liberty to utilize a non-licensed laboratory, notwithstanding the evidence is uncontradicted of the findings. We therefore are compelled to suppress the results of the blood analysis of defendant on a quantitative basis.

The commonwealth does not disagree with defendant's argument in this regard but does argue it does not follow Dr. Scanzillo is barred from testifying as to his findings of the qualitative[2] results of the testing of defendant's urine and blood. We agree. Section 1547(c)(2) is comprehensive in that it encompasses chemical testing of blood and urine. The act clearly mandates the testing be performed by a laboratory licensed by the Department of Health; however, it also is directive only in regard to the qualifications of personnel to perform the tests, to-wit, one who is authorized under the Clinical Laboratory Act, *supra*. Dr. Scanzillo testified he was qualified to perform the tests under the Clinical Laboratory Act, notwithstanding there has been no laboratory licensed by the Department of Health. Therefore, we conclude this expert, at trial, may testify concerning his analysis of whether or not a drug was in the blood and/or urine of the defendant, and if so, the nature thereof; however, the expert would not be permitted to testify as to the amounts or proportions of the components of the drugs.

Next, defendant at his suppression hearing elected to testify and, voluntarily, on his case-in-chief stated he had in fact been using drugs of some

2. A chemical analysis designed to identify the components of a substance or mixture.

nature to relieve a back pain immediately before operating his vehicle. He stated the drugs were non-prescriptive drugs which he obtained from another party and he did not know the type of drug he took. Defendant argues *Commonwealth v. Rogers*, 463 Pa. 399, 344 A.2d 892 (1975) prohibits the commonwealth from introducing in its case-in-chief at trial these inculpatory statements of defendant. We agree. There the court, addressing this same issue, stated:

"Appellant chose to testify during the trial, and the prosecution was entitled to bring to the jury's attention inconsistencies between the appellant's trial testimony and his suppression hearing testimony. This, of course, is only permissible where no evidence was suppressed. Where evidence has been suppressed, no reference to the suppression hearing is permissible because such a reference would reveal to the jury or permit the jury to speculate about the existence of inculpatory evidence withheld from the jury by the suppression order. If the defendant does not testify at trial, there is, of course, no proper occasion to refer to his testimony at the suppression hearing."

Hence, we cannot at this point determine defendant's incriminating statements must be suppressed as that decision must await the trial events. It is apparent, however, if defendant does not elect to testify, the commonwealth may not use the suppression admissions in the commonwealth's case at time of trial.

For these reasons we enter the following

## ORDER

And now, September 19, 1989, the motion to suppress the results of the blood/urine chemical

analysis of defendant is granted as to the quantitative analysis and denied as to the qualitative analysis.

The inculpatory testimony of defendant is suppressed, subject to the commonwealth's use thereof for rebuttal purposes in the event defendant elects to testify and contradicts his suppression testimony given under oath.