**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**David Karl GRAHAM, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 2014.

Filed Jan. 29, 2015.

Nevin R. Zimmerman, Mifflintown, for appellant.

Cory J. Snook, Assistant District Attorney, Mifflintown, for Commonwealth, appellee.

BEFORE: BOWES, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:

Appellant, David Karl Graham, appeals from the January 14, 2014 order denying Appellant's pretrial motion to dismiss all charges against him. Appellant argues the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial because the prosecutor's misconduct during Appellant's first trial resulted in mistrial.[1] After review, we affirm.

This prosecution commenced on November 16, 2011 when police filed a criminal complaint charging Appellant with 12 counts of aggravated indecent assault, 12 counts of indecent assault, and one count of corruption of minors.[2] The alleged victim is Appellant's daughter ("Daughter"),

who was eight years old at the time of the alleged sexual assaults and twenty-five years old at trial. Appellant's trial commenced on April 3, 2013 but resulted in a mistrial when a Commonwealth witness testified about sexual misconduct unrelated to the charged offenses. Specifically, Appellant's wife testified that her son from another marriage also was involved, presumably as another of Appellant's sexual assault victims. N.T., 4/3/13, at 87.

On April 4, 2013, the Commonwealth filed a motion to relist Appellant's trial for jury selection. The trial court granted that motion one week later. On May 17, 2013, Appellant filed a pre-trial motion seeking dismissal of all of his charges under the Double Jeopardy Clause. The trial court conducted a hearing on that motion on July 16, 2013. On January 14, 2014, the trial court filed its order denying that motion. This timely appeal followed. Appellant presents two questions for our review:

1. Was the lower court's factual finding that the Commonwealth did not intentionally elicit testimony in a bad faith effort to prejudice [Appellant] at trial, such that no intentional prosecutorial misconduct occurred, supported by competent evidence of record?

2. Did the lower court commit an error of law in denying [Appellant's] Motion to Dismiss on the grounds of double jeopardy by finding that no intentional prosecutorial misconduct occurred?

Appellant's Brief at 5.

■ We conduct our review as follows:

1. The trial court's order is an appealable collateral order under Pa.R.A.P. 313(b) so long as the court finds the appeal to be non-frivolous. Pa.R.A.P. 313, note; Commonwealth v. Brady, 510 Pa. 336, 508 A.2d 286, 289–91 (1986). The trial court deemed Appellant's appeal to be non-frivolous. Trial Court Opinion, 5/16/14, at § IV (the opinion is not paginated). The Commonwealth offers no argument to the contrary.

2. 18 Pa.C.S.A. §§ 3125(a)(7), 3126(a)(7), and 6301(a), respectively.

An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo[.] To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Kearns,* 70 A.3d 881, 884 (Pa.Super.2013), *appeal denied,* —— Pa. ——, 84 A.3d 1063 (Pa.2014).

■■■ Both of Appellant's arguments challenge the trial court's conclusion that the prosecutor did not engage in intentional misconduct. We will consider them together. The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. *Id.* Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. *Id.* at 884. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321, 325 (1992). An error by a prosecutor does not deprive the defendant of a fair trial. *Kearns,* 70 A.3d at 884. "However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied." *Id.* (quoting *Commonwealth v. Chmiel,* 777 A.2d 459, 464 (Pa.Super.2001), *appeal denied,* 567 Pa. 736, 788 A.2d 372 (2001), *cert. denied,* 535 U.S. 1059, 122 S.Ct. 1921, 152 L.Ed.2d 829 (2002)).

Thus under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, '[a] fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.'

*Id.* at 884–85 (quoting *Chmiel,* 777 A.2d at 464).

■ Pursuant to *Chmiel,* our first inquiry is whether the prosecutor engaged in misconduct at all. Prosecutorial misconduct occurs where the "unavoidable effect" of the prosecutor's actions is to "prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict." *Chmiel,* 777 A.2d at 464. If

prosecutorial misconduct occurred, we then discern whether that misconduct bars retrial. *Id.* at 465.

■ With these principles in mind, we turn to the facts of record. Appellant cites four instances of alleged misconduct, and we will address them in turn. Before doing so, we note Appellant objected to only one of the four alleged instances of misconduct, that being the incident that resulted in the mistrial. Appellant's wife ("Wife"), Daughter's mother, testified that Daughter cried as she first divulged the alleged sexual molestation to Wife. *Id.* at 86. After that conversation, Wife immediately went home and confronted Appellant. *Id.* Wife described that confrontation in the following exchange with the prosecutor:

Q. When you say you confronted [Appellant], what do you mean?

A. I told him. I said you know I talked to your daughter and she says that you sexually molested her.

Q. What was his reaction?

A. It was poor. I mean, it was like somebody that had just been run over by a truck.

Q. And what do you mean by that?

A. There was no denying it. There was no jumping up saying, you know, I didn't do that. It was, you know, I can't remember if I did that and just different questions and then just silence and—

Q. What questions did he ask you?

A. How old would I have been when I did that and how old would she have been? And I'll call. I'll get on the telephone and do you want me to call them, you know, and—

Q. Why did he offer to call?

A. To apologize. That's—

Q. Did he say that?

A. Yes, more or less tell them I'm sorry.

Q. When you say them, who?

A. My son was also involved.

Q. That's not what we're here about today.

A. No.

*Id.* at 86–87.

Defense counsel then requested a sidebar during which he moved for a mistrial. *Id.* at 86–91. The prosecutor argued for a curative instruction. *Id.* After hearing brief argument, the trial court granted defense counsel's motion. In reaching its decision, the trial court also relied on Daughter's testimony:

THE COURT: I'd also point out that at one point the victim testified when she was asked as to why she came forward at this point. Her testimony was that she came forward so that this would not happen to her daughter and her nephew. That caught my attention immediately when she said that.

So I am granting the motion for mistrial.

*Id.* at 90.

We first consider whether this exchange that resulted in the mistrial established grounds for prosecutorial misconduct. Without any prompting from the prosecutor, Wife described Appellant saying he would apologize to "them." N.T., 4/3/13, at 86–87. The prosecutor did not ask, directly or indirectly, about any unrelated criminal conduct. The prosecutor's line of questioning pertained only to Daughter. The second time Wife used the word "them" the prosecutor asked who she meant by "them." *Id.* At that point, Wife testified her son was involved. *Id.* Thus, the prosecutor never asked Wife a question about her son, nor did he ask any questions that prompted Wife to testify about more than one victim. The prosecu-

tor immediately informed Wife the trial did not involve allegations about her son.

We do not believe this exchange, considered by itself, evinces prosecutorial misconduct, much less an intent to provoke a mistrial or deprive Appellant of a fair trial. Even if the prosecutor could have worded his final question to Wife more carefully, the fact remains that he never prompted Wife to begin referring to more than one victim. During the ensuing colloquy among the trial court, prosecutor, and defense counsel, defense counsel conceded Wife's testimony was not responsive to the prosecutor's line of questioning:

> [Wife] had referenced other acts that were not involved in this case. Acts that we're not here on. She referenced specifically her son. She said my son was involved and **that wasn't even technically purely responsive to the question that was asked.**

*Id.* at 88 (emphasis added). Given all of the foregoing, we agree with the trial court that the prosecutor did not engage in intentional misconduct barring retrial.

 Next, we consider the incident referenced by the trial court in its decision to grant the mistrial:

Q. Why did you come forward with these allegations when you did?

A. Because I'm afraid that if I don't tell now, that at some point he might have had a chance to do it to my nephew or my daughter.

*Id.* at 46. This exchange is one of the three that Appellant cites as misconduct without having lodged an objection at trial. In order to preserve an allegation of prosecutorial misconduct, Appellant must object at trial when the misconduct occurs. *Commonwealth v. Hairston,* — Pa. —, 84 A.3d 657, 677 (2014), *cert. denied,* — U.S. —, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014). Appellant therefore failed to pre-

serve any argument that the prosecutor engaged in misconduct during his examination of Daughter. Accordingly, we will consider this exchange, pursuant to our plenary scope of review, only insofar as it sheds light on the prosecutor's intent during the objected to exchange that resulted in the mistrial.

The record, as quoted above, reveals that the prosecutor simply asked Daughter an open-ended question about why she came forward with her allegations against Appellant. Defense counsel did not object. As this Court stated in *Chmiel,* we discern the existence of prosecutorial misconduct before we determine whether the misconduct was sufficiently egregious to bar retrial. *Chmiel,* 777 A.2d at 465. As explained above, approximately seventeen years passed between the alleged sexual assaults and trial. The prosecutor chose to examine Daughter's motive for coming forward after a lengthy delay. We discern nothing objectionable in that line of questioning. Further, the prosecutor did nothing to prompt Daughter to refer to her daughter and nephew. The trial court noted his concern with Daughter's answer before granting Appellant's motion for mistrial. Given its decision to permit retrial, however, the trial court clearly did not believe the prosecutor engaged in any intentional misconduct. Likewise, we discern nothing in this line of questioning corroborating Appellant's argument that the prosecutor engaged in intentional misconduct during the objected to exchange that led to the mistrial.

Finally, we consider two other passages of the trial transcript Appellant believes are illustrative of the prosecutor's intentional misconduct, though Appellant again did not object to either line of questioning or ask to have any answer stricken. We note once again that we consider these passages only for the limited purpose of

discerning whether these passages corroborate Appellant's claim the prosecutor acted with ill intent during the objected to exchange that resulted in mistrial.

■ Appellant cites an exchange between the prosecutor and Wife in which the prosecutor asked Wife how old her son was when she married Appellant:

Q. Did you have any children before you married [Appellant]?

A. Yes, I do. I have one son.

[...]

Q. How old was he when you married [Appellant]?

A. 10.

*Id.* at 82.

We do not believe this exchange evinces intentional misconduct. The prosecutor did not invite Wife to allege that her son was one of Appellant's victims. Furthermore, given the delay between the alleged offenses and the trial, the jury could have surmised that Wife's son was relatively young when the alleged offenses occurred.

■ Finally, Appellant cites an exchange in which the prosecutor asked Wife if she had misgivings about Appellant babysitting the children at the time of the alleged sexual offenses:

Q. Who would watch the children when you were working[?]

A. [Appellant].

Q. At that time did you have any misgivings about that?

A. I had a couple little red flags earlier. Like when I worked there were some things that went on, but I addressed him about those and it was kind of like, you know, left go, so.

Q. Did that involve the children?

A. Yes.

Q. What kind of red flags?

A. Well, there was an incident where there was a bathtub,—a bathing with the two girls.

*Id.* at 84–85.

This line of questioning is troublesome, in that it is the only line of questioning in which the prosecutor invited Wife to address conduct concerning children other than Daughter. Nonetheless, the prosecutor did not directly ask about instances of sexual misconduct, nor did he pursue the bathing incident any further after Wife mentioned it. This line of questioning does not evince the prosecutor's ill intent during the exchange that resulted in the mistrial.

Based on the foregoing analysis, we affirm the trial court's order.[3]

Order affirmed.

■

---

**3.** We are cognizant that Appellant argues the trial court erred in failing to consider the analysis set forth in *Commonwealth v. Clark,* 287 Pa.Super. 380, 430 A.2d 655 (1981). The *Clark* Court, after noting that prosecutorial misconduct can arise in "an endless variety of circumstances," identified six circumstances relevant to ascertaining the prosecutor's intent in that case. *Id.* at 660–61. We do not agree with Appellant's assertion that the trial court's silence on *Clark* was in error. While *Clark* remains good law, no published case has cited to it since 1990 and we have found no case stating that application of its six-factor test is mandatory here. Since this Court and our Supreme Court have published many prosecutorial misconduct cases since 1990 without analyzing or even citing *Clark,* the trial court clearly had no obligation to do so in this case. Moreover, nothing in *Clark,* or in our Supreme Court's cases subsequent to *Clark,* suggests that the six factors applied

in *Clark* have been established as a new test for prosecutorial misconduct in lieu of the standard set forth in *Smith*. For the reasons discussed in the main text, we believe the trial court examined the circumstances relevant to this case and arrived at the correct conclusion.