J-A24016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RUDY EUGENE E. NORTH | |
| Appellant | No. 1618 EDA 2015 |

Appeal from the Order Entered May 22, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012176-2007

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 16, 2016**

Rudy Eugene E. North (North) appeals from the order entered on May 22, 2015, in the Court of Common Pleas of Philadelphia County, denying his motion to dismiss criminal charges based on double jeopardy.[1]  North's sole issue is a claim the trial court erred in determining the Commonwealth's conduct that occurred in his first trial was not intentionally undertaken with the intent of denying him a fair trial.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm the trial court's order denying North's motion to dismiss criminal charges on the basis of double jeopardy.

---

[1] This matter has returned to us from remand, the trial court having determined, pursuant to Pa.R.Crim.P. 587(B), that this appeal is not frivolous.  Accordingly, this represents an immediately appealable collateral order.  **See** Pa.R.A.P. 313.

The parties are familiar with the factual and procedural histories of this matter. Accordingly, we simply state that North was accused of sexually abusing his niece. During the course of the investigation of the alleged incidents, the Commonwealth came to believe that North's niece, the complaining witness (Child), was being improperly influenced by her mother to deny that anything improper has occurred. This belief arose from the Child making accusations and then recanting, and the interaction between the Assistant District Attorney (ADA) initially assigned to the case, Child and Child's mother. At the preliminary hearing, the ADA sought permission from the court to interview Child outside the presence of her mother, which was granted, and a child advocate and attorney were appointed to safeguard the rights of Child. Thereafter, Child testified to the alleged assaults and the case was bound over for trial.

At trial Child recanted her preliminary hearing testimony and the trial ADA called the initial ADA assigned to the case, Carrie Sarhangi, Esquire (ADA Sarhangi), to testify regarding her prior interactions with Child and Child's mother. In the course of this testimony, without prompting by the trial ADA, ADA Sarhangi vouched for the credibility of Child regarding Child's accusations against North, her uncle. North was acquitted of rape, but convicted of child endangerment, indecent assault and corruption of a minor. On direct appeal, North was granted a new trial because the trial court, over objection, allowed ADA Sarhangi to give her personal opinion regarding Child's credibility. North now claims retrial is barred by double jeopardy

considerations. Specifically, he claims that by vouching for the credibility of

Child, the Commonwealth intentionally sought to deprive him of a fair trial:

> During the testimony of the Preliminary Hearing ADA, there were multiple instances where ADA Sarhangi impermissibly provided opinion evidence both as to Mr. North's guilt and [Child's] credibility. It is respectfully submitted that this was intentional conduct intended to subvert the judicial process and deny a fair trial, and this Court should reverse the decision in the Court below and order Mr. North discharged.

Appellant's Brief at 10.

> Our scope and standard of review are as follows:
>
> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*[.] To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:
>
> > Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Graham***, 109 A.3d 733, 736 (Pa. Super. 2015) (citation

omitted).

In denying North's motion to dismiss, the remand court[2] opined while there had been misconduct, it was not undertaken with the intent of depriving North of his rights to a fair trial. *See* Remand Court Opinion [RCO] at 3. The remand court concluded, "Although such testimony was impermissible, it was not an intentional act by the Commonwealth to prejudice the defendant from having a fair trial." RCO at 4. The remand court determined, "it was merely an ill-advised trial strategy to bolster the inconsistencies of the victim's testimony." *Id*. Our independent review of the certified record leads us to the same conclusion.

We begin with the salient standards regarding double jeopardy in Pennsylvania jurisprudence.

> Our Supreme Court has determined that the Double Jeopardy Clause of Pennsylvania's constitution provides greater protection than its federal counterpart:
>
> > [T]he double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.
>
> *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321, 325 (1992).
>
> As this Court has reflected:

_____

[2] This case did not return to the same trial court on remand. Accordingly, we refer to the court that addressed the motion to dismiss as the "remand court" to make this distinction.

> The **Smith** standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial. A fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

> **Commonwealth v. Chmiel**, 777 A.2d 459, 464 (Pa. Super. 2001).

> Thus under Pennsylvania jurisprudence, it is the *intentionality behind the Commonwealth's subversion of the court process,* not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, "[a] fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity." **Chmiel**, 777 A.2d at 464 (quoting **Commonwealth v. Martorano**, 559 Pa. 533, 741 A.2d 1221, 1223 (1999)).

**Commonwealth v. Kearns**, 70 A.3d 881, 884-85 (Pa. Super. 2013).[3]

First, the prior decision by a panel of our Court determined the *trial court* had committed an error of law in allowing improper opinion testimony by ADA Sarhangi, who, during examination, vouched for the credibility of

---

[3] North did not seek a mistrial; accordingly, that aspect of the double jeopardy analysis is not applicable.

Child in accusing North of having molested her.[4]  *See Commonwealth v. North*, 2012 WL 10920259, (Pa. Super. 5/7/2014) (unpublished memorandum).  Indeed, no **question** posed by the trial ADA during the relevant portion of ADA Sarhangi's testimony elicited an objection from the defense.

As previously stated, at trial, Child recanted her allegations and preliminary hearing testimony against her uncle, North.  ADA Sarhangi, as the initially assigned ADA, had been in a position to witness Child interact with her mother and was thereby able to explain the circumstances of her inconsistent testimony.  As such, ADA Sarhangi's testimony during the Commonwealth's case-in-chief provided context to Child's trial testimony and allowed the jury to fully weigh all the evidence presented.  Further, it is important to note that the prior panel of our Court specifically stated, "Thus, while the previous prosecutor certainly could testify as to the victim's family's lack of support and its attempts to persuade the victim to recant, the [trial] court erred in allowing her to opine as to her beliefs on the credibility of the victim."  *Id*. at *6.  What the prior panel of our Court did

_____

[4]  As more fully discussed below, ADA Sarhangi's direct examination consisted mainly of a 13-page narrative of the preliminary hearing process, and perceived problems attendant thereto, in response to the question, "Do you remember a case involving [Child]?"  N.T. Trial, 7/29/2010, at 159. Relevant to this appeal, the narrative was interrupted after nine pages of testimony by defense counsel's initial objection regarding ADA Sarhangi's opinion testimony.

find improper were two instances where the trial court allowed ADA Sarhangi to state her personal belief that Child was truthful when she accused North of having sexually assaulted her. The specifics of this improper testimony will be discussed *infra*.

Next, this matter presents an unusual situation in that it is not the actions of the trial ADA that are at issue so much as the actions of a witness who was also prosecutor. As noted above, there is no suggestion in our Court's prior decision, in North's current brief, or in the certified record that the trial ADA engaged in misconduct or that he and ADA Sarhangi were acting in collusion. No instantly relevant question by the trial ADA was the source of an objection. Rather, it was the unprovoked answers by the witness that provide the basis of North's double jeopardy claim.

Accordingly, we examine whether that improper testimony was offered with the intent to deprive North of his right to a fair trial.

At trial, ADA Sarhangi provided a narrative description of the observations during the preliminary hearing process. The first substantive testimony on direct examination by the trial ADA is found in the notes of testimony of July 29, 2010 at page 159.

> Q: Okay. I want to take you back to – well, do you remember a case involving [Child]?
>
> A: I do. Actually rather vividly comparing how long ago the case was.
>
> Q: Why is it that you remember that particular case?

A: I was rather involved in this case. I was the first assistant district attorney to handle the case. So what generally happens is once a complaint is filed, then the person is arrested and we start the preliminary hearing process.

A preliminary hearing – I'm not sure if someone else testified about this yet or not.

Q: Please do.

N.T. 7/29/2010, at 159.

After "Please do," ADA Sarhangi testified uninterrupted by subsequent questions for nine pages of recorded testimony. *See* N.T. Trial, 7/29/2010, pp 159-168. ADA Sarhangi's testimony from pages 159-168 addressed her observations of the interaction between Child and Child's mother, as well as her own interactions with Child. As such, this testimony evidences an intent to describe the ways that Child has been emotionally pulled by her mother and her uncle, North, away from her original accusations. In other words, the testimony provided a basis to explain to the jury why Child had recanted.

It is not until the end of this multi-page narrative that ADA Sarhangi improperly commented on Child's credibility. ADA Sarhangi had described the manner in which she interviewed Child on the day of the preliminary hearing. As part of that description, she indicated she changed the focus of her inquiry from what Child was currently saying (recanting), to Child's statements to her school counselor in which she had accused North. At that point of the conversation between ADA Sarhangi and Child, Child reiterated her accusations. Specifically, ADA Sarhangi testified:

- 8 -

[ADA Sarhangi]: Then when I changed my questioning back to ["]Well, so when you were five then, what happened?["] She continued telling the story. That's kind of how I knew she was telling the truth because –

[Defense Counsel]: I'm going to object to that because it's an opinion and it's not relevant for these proceedings.

The Court: All right. Well, it is your opinion. You can express in that way at this point.

[ADA Sarhangi]: Yes, your Honor.

The Court: So if you wouldn't mind rephrasing it.

[ADA Sarhangi]: Of course. At that point I believed [Child] was telling the truth because I felt like I had given her an out, a way to just open the door and for her to start telling the truth by saying, you know, this was my end. [sic]

*Id*. at 168.

Later, ADA Sarhangi again vouched for Child's credibility in accusing North.

[Trial ADA]: So what was your motivation in this case for getting [Child] to testify [at the preliminary hearing]?

[ADA Sarhangi]: I believed her. I thought what she was saying was the truth.

[Defense Counsel]: I'm just going to object. It's not relevant. Her opinion is not relevant.

The Court: Why isn't it relevant? I'm overruling the objection.

[ADA Sarhangi]: I believed [Child]. I think any seven year old in a situation where your mom's telling you don't say X, doesn't say X. Mom says Y, they say Y.

The Court: You're not answering the question.

> [ADA Sarhangi]: I believed [Child], not her mom. And I felt that this was the only way to get her out of the hostile environment and I felt that she needed an advocate and support outside of her family because I didn't think her family wasn't [sic] being supportive of her and a seven year old I felt that she was so young and impressionable that anyone in her family could force her to try and say something that wasn't true and being a victim of sexual assault, the only way you can ever deal with it and get it past you is to deal with it and move forward.
>
> I believed [Child] and I wanted to prosecute the case because I felt she was telling the truth and it was the right thing.

*Id*. at 180-81.

The trial court's initial overruling of defense counsel's objection that allowed ADA Sarhangi to give her opinion regarding her interaction with the Child, which was later found to be error by our Court, essentially sanctioned ADA Sarhangi's subsequent opinion testimony regarding her belief that Child's allegations against her uncle were truthful. Defense counsel's second objection was lodged and again overruled, and the trial court even prompted ADA Sarhangi to clarify her answer. North has provided no case law indicating that actions of a witness or trial attorney who is following a judge's evidentiary ruling, even one that is later determined to be an error of law, can be considered evidence of intent to prejudice a defendant.

Because of the trial court's rulings, we review ADA Sarhangi's first statement, "That's kind of how I knew she was telling the truth because —", N.T. Trial, 7/29/2010 at 168, *supra*, as to its intent to prejudice the defendant. The statement was made during ADA Sarhangi's lengthy explanation of the circumstances that led to Child's preliminary hearing

- 10 -

testimony and appointment of a child advocate and lawyer to safeguard Child's rights. The complained-of testimony followed a narrative to describe Child's vacillations of her statements against North. The remand court did not perceive this testimony as an improper attempt to prejudice North, but rather as the unfortunate culmination of the attempt to explain Child's testimonial inconsistency.

Our review of the certified record, especially the trial notes of testimony, combined with the facts that ADA Sarhangi's comment was not invited by a question posed by the trial ADA, defense counsel did not seek either a mistrial or curative instruction, and the prior decision by our Court was predicated on trial court error, leads us to conclude there was no intent to deprive North of a fair trial. Because North has not demonstrated the requisite intent to deprive him of a fair trial by the Commonwealth, North is not entitled to invoke the protection against double jeopardy.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016

- 11 -