J-S30007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD LEE WEISS | : | |
| | : | |
| Appellant | : | No. 1504 WDA 2019 |

Appeal from the Order Entered August 1, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000218-1997

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    FILED AUGUST 21, 2020

Ronald Lee Weiss (Appellant) appeals from the order denying his motion to dismiss the charges against him based on double jeopardy (Jeopardy Motion).[1]   After careful review, we are compelled to vacate the order and remand for consideration of the Pennsylvania Supreme Court's recent decision in Commonwealth v. Johnson, 2020 Pa. LEXIS 2791, 40 EAP 2018 (May 19, 2020).

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While an order denying a motion to dismiss on double jeopardy is technically interlocutory, the order is appealable as of right.  See Commonwealth v. Hallman, 67 A.3d 1256, 1260 n.3 (Pa. Super. 2013); see also Commonwealth v. Orie, 22 A.3d 1021, 1024 (Pa. 2011).  Accordingly, we have jurisdiction over this appeal.

The trial court summarized the relevant history of this case as follows:

[Appellant] was convicted of first-degree murder following a jury trial held in July of 1997.[2]  The jury returned a verdict of death following the penalty phase.

[Appellant] pursued a direct appeal, and in 2001, the Supreme Court of Pennsylvania affirmed the judgment of sentence.  See Commonwealth v. Weiss, 776 A.2d 958 (Pa. 2001).  [Appellant] then pursued collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, et seq., and in 2007, the PCRA court granted [Appellant] a new trial.  The basis for relief was a finding that the Commonwealth[, acting through prosecutor J. Scott Robinette, Esquire (hereinafter "Robinette"),] committed a Brady violation, see Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, the PCRA court found that [Robinette had] suppressed information regarding two Commonwealth witnesses, both of whom were incarcerated at the time of [Appellant's] jury trial and testified regarding "jail house" confessions by [Appellant].  The suppressed information related to efforts made by the Commonwealth to aid the witnesses' release from incarceration.

Subsequently, the Pennsylvania Supreme Court remanded the matter to the PCRA court after finding that the PCRA court failed to engage in part of the Brady analysis, i.e., whether the suppression of information that served as the basis of the Brady violation was material to the outcome of the case, i.e., did [Appellant] receive a fair trial under the circumstances.  See Commonwealth v. Weiss, 986 A.2d 808 (Pa. 2009) (Weiss II). …

[The PCRA court] issued a decision on the remanded PCRA matters on March 19, 2012[, where it] agreed … that the Commonwealth suppressed impeachment evidence in violation of the duties set forth in Brady.  However, [the court] concluded that [Appellant] was not entitled to a new trial, because the other evidence presented to the jury was overwhelming, and, therefore, the jury's verdict was worthy of every confidence. []  An appeal

_____

[2] Though the facts underlying the conviction are not relevant to this appeal, briefly, Appellant murdered 16-year-old Barbara Bruzda in 1978 and left her body in the woods; Appellant evaded prosecution for many years.

- 2 -

was taken from [this] decision, and on October 31, 2013, the Pennsylvania Supreme Court affirmed. [See Commonwealth v. Weiss, 81 A.3d 767 (Pa. 2013) (Weiss III)].

[Appellant] then pursued federal habeas corpus relief pursuant to 28 U.S.C.A. § 2254. By an Opinion and Order dated February 14, 2018, the United States District Court granted [Appellant's] request for relief. [See Weiss v. Wetzel, 2018 U.S. Dist. LEXIS 23741, at *44 (W.D. Pa. 2018) (Weiss Fed.).][3] The grant of the writ was conditional, in that it was stayed to permit the Commonwealth the opportunity to commence a new trial. [Id. at *53.] The matter was returned to this state trial court to conduct the new trial.

Counsel for [Appellant thereafter] filed [the Jeopardy Motion], and the court scheduled and held a hearing pursuant to Pa.R.Crim.P. 587[(B) (governing motions to dismiss on double jeopardy grounds)] on January 15, 2019. The Commonwealth presented the testimony of [] Robinette ...; no other testimony was presented. ...

Facts

The court finds that there is no dispute as to what the Commonwealth did and failed to do relative to the 1997 prosecution of [Appellant]. ... It is undisputed that the Commonwealth engaged in the following conduct:

[Pennsylvania State] Trooper John Tamewitz (hereinafter "Tamewitz") obtained a written statement from Samuel Tribuiani (hereinafter "Tribuiani") on April 2, 1996. The written statement indicated that [Appellant] confessed to the Bruzda murder while the two individuals were incarcerated together [on crimes

_____

[3] The Court in Weiss Fed. held that Robinette's misconduct deprived Appellant of a fair trial, where Robinette suppressed impeachment evidence regarding the two Commonwealth witnesses discussed above. See id. at *52 (stating that where "prosecutors do secret deals, suppress evidence of them, stand by silently when the witnesses they determine to be central to their case lie about those deals, and then cover their tracks with their own false statements in and to a trial court, all in a way that plainly impacts the course and outcome of the trial, both those charged with crimes and the public are deprived of the fair trial that our Constitution commands").

- 3 -

unrelated to this case]. The written statement also indicates that no promises were made in exchange for Tribuiani's testimony.

The following day, Tribuiani contacted Tamewitz and requested his assistance in expediting his parole. Tribuiani was incarcerated at S.C.I. Huntingdon at the time.

Tamewitz contacted ... Michael Marino[, Esquire ("DA Marino")], the District Attorney of Montgomery County, to inquire about Tribuiani's parole and early release status.

* * *

Robinette [thereafter phoned] the Superintendent at S.C.I. Huntingdon and inquired if Tribuiani was eligible for parole or pre-release.

Shortly after, ... Robinette authored three letters regarding Tribuiani[, which he respectively sent to] Tribuiani's sentencing judge, the victim-witness coordinator of Montgomery County, and [DA Marino]. These individuals would have the opportunity to provide input to the Pennsylvania Board of Probation and Parole [("the Board")] regarding Tribuiani's release on parole. ... Tribuiani was blind copied on these letters.

Robinette followed his letter ... with a phone call to DA Marino.

* * *

Kenneth Wright (hereinafter "Wright") signed a statement indicating that [Appellant] had confessed to committing the Bruzda murder while the two were incarcerated together. This statement was signed in January of 1996.

On December 13, 1996, Robinette wrote a letter to Nicholas Muller, the Chairman of the [Board]. Robinette stated "This office has promised nothing to Wright in exchange for his cooperation. I have explained to him that parole authority in his case rests exclusively with the Board .... I am writing this letter merely to inform the Board of Wright's cooperation in the investigation and potential prosecution of a very serious crime." The letter was carbon copied to Tamewitz and blind copied to Wright.

\* \* \*

[Appellant subsequently filed a] motion for disclosure of impeachment information as to potential Commonwealth witnesses." [The trial court granted the motion.] As a result, the Commonwealth was ordered to notify the defense of "any deals or understandings made between the Commonwealth and potential witnesses, Tribuiani and Wright." In response to a direct inquiry by the court on this matter, Robinette stated "Deals, we don't have any deals with them, Judge." ...

\* \* \*

Following a pretrial motion hearing, on May 20, 1997, Robinette authored and presented a letter to [Appellant's] counsel stating that the Commonwealth will only report the nature and extent of the witnesses' cooperation whenever queried regarding the same. Robinette obviously had already written multiple letters on behalf of Tribuiani and Wright at the time this letter was submitted.

\* \* \*

At the time of [Appellant's] trial, the Commonwealth called Wright as a witness. Robinette specifically asked Wright "Has anyone made you any promises in exchange for your testimony?" Wright responded, "No, sir." On cross-examination, defense counsel asked Wright[, regarding the prosecution,] "So they did something in exchange for the statement, didn't they?" Robinette immediately objected and the objection was sustained by the court. Robinette asked Wright if he "ask[ed] for anything in exchange for that statement." Wright responded "No, I did not."

\* \* \*

The Commonwealth called Tribuiani as a witness at the time of trial. During his testimony, Tribuiani stated that no one had made any promises to him in exchange for his testimony. ...

Robinette also called Tamewitz as a witness. In response to questioning by Robinette, Tamewitz stated that nothing was promised to Tribuiani in exchange for his testimony.

\* \* \*

After the conclusion of the trial, Robinette authored a letter to … [the] Chairman of the [Board]. … Robinette request[ed] that the "Board consider Mr. Tribuiani's contribution to this most unusual prosecution when evaluating the propriety of granting him parole."

* * *

Robinette authored a letter to … the Superintendent of S.C.I. Graterford. … In this letter, Robinette requests [that the Superintendent] "consider Mr. Tribuiani's cooperation with this office when commenting on the propriety of his parole."

* * *

Robinette also wrote a letter to the [Board] on behalf of Wright after the trial. … Robinette informed the Board of Wright's assistance in the conviction of [Appellant], and requested that the Board "consider Mr. Wright's contribution … when evaluating the propriety of granting him parole."

Trial Court Opinion and Order, 8/1/19, at 3-13 (footnotes and emphasis added, citations and formatting modified, some capitalization omitted).

By order entered August 1, 2019, the trial court denied Appellant's Jeopardy Motion. Appellant then filed a petition for permission to file an interlocutory appeal, which the trial court granted after finding that the matter was immediately appealable. Appellant filed this timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement.

Appellant presents one issue for our review:

Should the Commonwealth's withholding of the existence of agreements with two material witnesses and knowing presentation of false testimony in a capital trial bar retrial on double jeopardy grounds, notwithstanding the trial court's finding that the Commonwealth's misconduct was outrageous but not intentional as it was born from ignorance and arrogance?

- 6 -

Appellant's Brief at 5-6.

We review Appellant's claim mindful that an appeal based on double jeopardy presents a question of constitutional law. Commonwealth v. Byrd, 209 A.3d 351, 353 (Pa. Super. 2019). As with all questions of pure law, our standard of review is de novo and our scope of review is plenary. Id.

In addressing a double jeopardy claim, we consider:

> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

Commonwealth v. Adams, 177 A.3d 359, 371 (Pa. Super. 2017) (emphasis added); see also Commonwealth v. Smith, 615 A.2d 321, 325 (Pa. 1992) (same).

Further, we are mindful that:

> under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial.

Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, a fair trial is not simply a lofty goal, it is a constitutional mandate and where that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.

Commonwealth v. Graham, 109 A.3d 733, 736 (Pa. Super. 2015) (citations omitted).

Instantly, we are presented with whether the trial court erred in concluding that Robinette did not act intentionally with regard to his communications with Wright, Tribuiani and the other state entities. The trial court opined that Robinette's explanations for his actions were "extremely flawed and troubling," "outrageous," and the product of "arrogance and ignorance"; nevertheless, the court found there was not enough to establish that the misconduct was intentional, instead of potentially "inadvertent." See generally Trial Court Opinion and Order, 8/1/19, at 27-31; see also id. at 27 (stating that the court "finds Robinette's testimony to be credible in a critical regard; this court believes that Robinette genuinely thinks that his actions did not and do not constitute prosecutorial misconduct.").

However, Appellant, in his reply brief, points to our Supreme Court's recent decision in Johnson, supra, which was decided after Appellant filed the underlying appeal. Appellant's Reply Brief at 1-2. Appellant argues that pursuant to Johnson, Robinette's "reckless participation in prosecutorial

misconduct established by the record is sufficient to bar retrial on double jeopardy grounds." Id. at 1 (emphasis added).

In Johnson, the Supreme Court expanded upon existing case law concerning prosecutorial misconduct sufficient to bar retrial, stating:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result.

Johnson, 2020 Pa. LEXIS 2791, at *39 (emphasis added). The Court stated that unlawful prosecutorial overreaching encompasses "governmental errors that occur absent a specific intent by the prosecutor to deny the defendant his constitutional rights." Id. at *36; but see also id. at *40 (explaining that "we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter.").

Here, the trial court, acting as factfinder, found insufficient evidence to establish that Robinette acted intentionally in failing to disclose his communications with Wright and Tribuiani. Accord Adams, 177 A.3d at 370 (explaining our deferential review of credibility determinations in the context of a double jeopardy ruling). However, the court did not consider or address whether Robinette's actions constituted reckless behavior, pursuant to the recent dictates of Johnson.

Accordingly, we vacate the trial court's order denying the Jeopardy Motion and remand for further proceedings as to whether Robinette's conduct was undertaken recklessly. See Johnson, 2020 Pa. LEXIS 2791, at *39.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2020