J-A04005-18
J-A04006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NELSON RIVERA, JR. | |
| Appellant | No. 792 MDA 2017 |

Appeal from the Order May 8, 2017
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000513-2016

_____

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NAPHEACE JAMAL COOPER-REID | |
| Appellant | No. 793 MDA 2017 |

Appeal from the Order May 8, 2017
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000245-2016

BEFORE:  STABILE, J., NICHOLS, J., and RANSOM, J.

MEMORANDUM BY STABILE, J.:          **FILED: OCTOBER 13, 2020**

In these consolidated appeals, Appellants Nelson Rivera, Jr. and Napheace Jamal Cooper-Reid, co-defendants in a drug trafficking case, appeal from an order denying their motions to bar retrial on double jeopardy grounds following the declaration of a mistrial. Appellants contend that the

Commonwealth committed prosecutorial misconduct with the intent to force a mistrial or prejudice Appellants' right to a fair trial. On June 13, 2018, we affirmed the order denying Appellants' motions for the reason that the Commonwealth's conduct was merely negligent, not intentional misconduct designed to deprive Appellants of a fair trial. On June 25, 2020, our Supreme Court remanded these appeals to us for reconsideration in light of the Court's decision in **Commonwealth v. Johnson**, —A.3d—, 2020 WL 2532671 (Pa., May 19, 2020), which held that prosecutorial overreaching sufficient to invoke double jeopardy protections under the Pennsylvania Constitutional "includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." **Id.** at *15. Having studied **Johnson** and the record in this case, we hold that the Commonwealth's conduct was merely negligent, not reckless. Thus, the trial court properly denied Appellants' motions to bar retrial, and we affirm.

Appellants were charged with twenty counts of possession with intent to deliver a controlled substance, a general conspiracy to sell a controlled substance, two counts of corrupt organizations, one count of criminal use of a communication facility and one count of dealing in proceeds of unlawful activity. The case was complex because there were nineteen alleged sales of various controlled substances between July 25, 2014 and April 19, 2015. The trial court set aside five days for a jury trial, and the Commonwealth provided a voluminous amount of pretrial discovery to Appellants.

The Commonwealth committed the following missteps in this case:[1] (a) it did not inform Appellants that lead investigator Agent Sproat was going to be called at trial, in part, as an expert witness; (b) it failed to provide a PowerPoint presentation to Appellants before trial, and when it gave the PowerPoint to Appellants during trial, it altered one of the PowerPoint slides without first advising Appellants; (c) it introduced photographs during trial consisting of aerial view maps of Lock Haven that it failed to disclose to Appellants before trial; (d) it destroyed a cell phone containing text messages that Agent Sproat testified about during trial; and (e) prior to trial, it failed to disclose an inculpatory statement made by Appellant Rivera to Agent Sproat. The final error (the failure to disclose Rivera's statement in advance of Agent Sproat's testimony at trial) came to light on the third day of trial. At that point, the trial court granted Appellants' motion for a mistrial.

The trial court scheduled a retrial, but Appellants moved to bar retrial on the basis of double jeopardy. In response, on May 5, 2017, the trial court convened a hearing in which Agent Sproat testified about the Commonwealth's errors during trial. The theme of his testimony was that he did nothing intentional to prejudice Appellants during trial. After the hearing, the trial court denied Appellants' motion to bar retrial but declared its order immediately appealable. Appellants filed timely appeals, and on June 13,

---

[1] We will discuss each of these errors in greater detail below.

2018, this Court affirmed in a memorandum on the ground that Appellants failed to demonstrate that the Commonwealth committed intentional misconduct to deprive them of a fair trial. Appellants filed timely applications for reargument, which this Court denied, and petitions for allowance of appeal in our Supreme Court. The Supreme Court granted allocator, and on June 25, 2020, it vacated this Court's order and remanded for further consideration in light of its decision in *Johnson*.

On remand, Appellant Rivera has filed a supplemental brief in which he raises a single issue: "Whether the Pennsylvania Supreme Court's decision in [*Johnson*] dictates that the above-captioned matter should be dismissed due to prosecutorial misconduct?" Appellant Rivera's Supplemental Brief at 1. Appellant Cooper-Reid has filed a supplemental brief raising one question: "Whether the Supreme Court decision [in *Johnson*] bars retrial of the Appellant based on double jeopardy?" Appellant Cooper-Reid's Supplemental Brief at 1.

> An appeal grounded in double jeopardy
>
> raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo* . . . To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:
>
> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the

fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Graham***, 109 A.3d 733, 736 (Pa. Super. 2015).

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution prohibit retrial where prosecutorial misconduct during trial provokes a criminal defendant into moving for a mistrial. ***See Oregon v. Kennedy***, 456 U.S. 667, 679 (1982); ***Commonwealth v. Simons***, 522 A.2d 537, 540 (Pa. 1987). However, Article 1, § 10 of the Pennsylvania Constitution offers broader protection than its federal counterpart in that

> the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

***Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992).

Earlier this year, our Supreme Court held in ***Johnson*** that in addition to the misconduct described in ***Smith***, prosecutorial overreaching sufficient to invoke double jeopardy protections under the Pennsylvania Constitution includes reckless misconduct that deprives the defendant of a fair trial. ***Johnson***, 2020 WL 2532671, at *15. In ***Johnson***, the victim was shot twelve times outside of a bar in Philadelphia and died as a result of the shooting. Police believed that multiple people acted in concert to kill the victim. Police recovered a red baseball cap about nine feet from the victim's body. A friend

of the victim who was with him at the time of the shooting gave a police detective a black baseball cap with a bullet hole in it that the victim had been wearing when he was shot. The victim's blood was found under the brim of the black baseball cap. The defendant's DNA was found on the sweatband of the red baseball cap.

The Commonwealth proceeded on the premise that there was only one baseball cap involved—the red one—and that it contained both the victim's blood and the defendant's DNA. In fact, the red cap had the defendant's DNA, whereas the black cap contained the victim's blood, and neither cap had DNA from both individuals. The defendant was ultimately arrested and charged with first-degree murder and other offenses.

At trial, the prosecutor told the jury in his opening statement that the red baseball cap had the defendant's sweat on it and the victim's blood on it. The lead crime scene investigator testified that he recovered the red baseball cap from the scene and he saw fresh drops of blood underneath the red cap's brim. The Commonwealth presented evidence and a closing argument consistent with the theory that the victim's blood and the defendant's sweat were found on the red cap. There was no mention of the black cap. The defendant was convicted on all counts and sentenced to death. The Supreme Court affirmed the judgment of sentence.

In PCRA[2] proceedings, a criminalistics lab employee wrote a forensics report that stated that two caps, a red cap and a black cap, each with a distinct property receipt number, were analyzed and that the victim's blood was only found on the black cap. On this basis, the Commonwealth conceded that a new trial should be granted.

The defendant filed a motion to bar retrial under double jeopardy principles. Following an evidentiary hearing, the trial court stated that the trial was a "farce," and that the Commonwealth committed "almost unimaginable mistakes." *Id.* at *6. The court, however, credited the prosecutor's testimony and concluded that the Commonwealth did not engage in intentional misconduct and bad faith. As a result, the court concluded that the proper remedy was a new trial. On interlocutory appeal, this Court affirmed.

Our Supreme Court reversed and remanded for entry of an order granting the defendant's motion to preclude retrial. The Court held that

> prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in *Smith*, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

---

[2] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

*Id.* at *15. The Court cautioned, however, "retrial is only precluded where there is prosecutorial overreaching—which, in turn, implies some sort of conscious act or omission." *Id.*

The Court continued:

[T]he common pleas court saliently found that the experienced prosecuting attorney made "almost unimaginable" mistakes, which "dovetailed" with other serious errors by law-enforcement officers and other police personnel such as the DNA lab technician. In terms of the errors made by the attorney himself, first, there was a notable discrepancy between the property receipt numbers for the two caps. The prosecutor was aware this meant that the associated results reflecting the presence of the victim's blood and [the defendant]'s DNA might have related to different pieces of physical evidence. Yet, in the face of this information, he never sought to verify his working hypothesis that the receipt numbers pertained the same baseball cap. He did not even notice this error at the preliminary hearing when he had in his possession property receipt number 2425291, which clearly stated that it was associated with a black baseball cap. Second, in preparation for a capital case, the prosecutor did not obtain a criminalistics report which would have summarized the evidence connected with the matter and revealed that there were two different caps involved.

As to the court's suggestion that these items "dovetailed" with the errors of other law enforcement personnel who held lead roles in the investigation and prosecution, there are two particularly noteworthy examples. First, on the night of the shooting, the assigned detective interviewed the victim's companion, Ms. Williams, who personally handed him a black baseball cap with a bullet hole in it, and explained that it was the hat the victim was wearing when he was shot. This crucial piece of information was apparently forgotten as the investigation ensued. Second, the lead crime scene investigator testified that, when he went to the location of the murder, he saw fresh drops of blood under the brim of the red cap, when that would have been impossible—as persuasively explained by the common pleas court. Additionally, the fact that no photographs of the underside of the brim were part of the crime scene record appears not to have been viewed as problematic by anyone associated with the prosecution. We, like the common pleas court, cannot escape the conclusion that

the officer testified to something that he did not actually observe, especially in light of his subsequent explanation that the testimony was wrong and was based on a mere assumption.

Although the record, as discussed, supports the common pleas court's ultimate finding that these acts and omissions were not made intentionally or with a specific purpose to deprive [the defendant] of his rights, the record is likewise consistent with that tribunal's characterization that such mistakes were "unimaginable." Although "unimaginable" is not a traditional *mens rea* descriptor, it is, together with all of the circumstances on which it was based, strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial.

*Id.* at 16.

Our Supreme Court's decisions in **Smith** and **Johnson** establish that Pennsylvania's double jeopardy clause bars a retrial when the Commonwealth engages either in intentional misconduct designed to deny the defendant a fair trial or reckless misconduct. Importantly, these decisions are silent as to whether mere negligence by the Commonwealth precludes retrial under double jeopardy principles. Accordingly, our own decision on the subject of negligence, **Commonwealth v. Kearns**, 70 A.3d 881 (Pa. Super. 2013), continues to remain good law. **Kearns** holds that the Commonwealth's negligence—even gross negligence—is not a sufficient basis upon which to bar retrial on double jeopardy grounds. **Id.** at 886 (in attempted murder case, prosecutor's gross negligence in failing to obtain and produce clearly discoverable material, namely, defendant's post-arrest written statement to

police and statement of only eyewitness, was insufficient basis upon which to bar retrial on double jeopardy ground).

With this review of the law as backdrop, we turn to the errors committed by the Commonwealth in this case. *First*, at the beginning of trial, the Commonwealth moved to qualify Agent Sproat, a lead investigator who posed as a heroin user during the underlying investigation, as an expert in voice recognition. N.T., 2/27/17, at 45-57, 61-66. The trial court denied the Commonwealth's motion because it failed to disclose before trial its intent to qualify Agent Sproat as an expert witness. *Id.* at 77-78.

*Second*, the Commonwealth attempted to introduce a PowerPoint presentation to the jury that summarized evidence it had produced to Appellants during pretrial discovery. Appellants objected on the ground that the Commonwealth had not disclosed the PowerPoint presentation itself before trial. N.T., 2/28/17, at 74. The trial court ordered the Commonwealth to provide a copy of the PowerPoint to Appellants before introducing it into evidence. The Commonwealth did so but altered one of the PowerPoint slides without first advising Appellants. N.T., 3/1/17, at 179-80. The slide originally reflected that one Draymond Jones made a drug delivery on April 19, 2015, but the Commonwealth corrected the slide to reflect that Appellant Cooper-Reid made the delivery—a claim that was consistent with a report that the Commonwealth provided Appellants during pretrial discovery. *Id.* at 179-80. The trial court permitted the jury to view the corrected slide.

Following the grant of a mistrial, and during the hearing on Appellants' motion to bar retrial on the basis of double jeopardy, Agent Sproat explained that (1) he, the trial prosecutor, and a police chief corrected the PowerPoint slide to state that Appellant Cooper-Reid made the drug delivery instead of Jones, (2) the PowerPoint consisted of information included in reports that Appellants received during discovery, and (3) the PowerPoint presentation was a work in progress at the time of trial. The prosecution showed the corrected PowerPoint slide to the jury instead of the incorrect slide. Agent Sproat testified that he did not intentionally change information on the PowerPoint but simply corrected the mistaken reference to Jones. N.T., 5/5/17, at 3-42.

*Third*, after Agent Sproat testified about a controlled purchase of heroin, Appellants objected that the Commonwealth had not provided them with aerial photographs of Lock Haven that were part of the PowerPoint presentation. The photographs were essentially maps of the relevant area where the crimes allegedly took place. The prosecutor informed the trial court that it had not provided the photographs before trial because the information was otherwise available. Agent Sproat testified that certain maps were contained in his reports, although the map in question may not have been contained in a report. Agent Sproat's reports detailed the route he travelled in various parts of the investigation. Accordingly, Agent Sproat explained that the photographs/maps were in the PowerPoint to clarify to the jury where he was going. The trial court concluded that the Commonwealth had to disclose the

photographs/maps under Pa.R.Crim.P 573(B)(1)(f). The trial court confirmed with counsel for Appellant Cooper-Reid that he received copies of the photographs/maps through the PowerPoint that the Commonwealth gave him on the first day of trial. Counsel stated, "We do have copies of the PowerPoint. And I don't see any prejudice there." N.T., 02/28/17, at 80-83.

*Fourth*, the Commonwealth destroyed a cell phone that contained text messages between Agent Sproat and Appellant Rivera. N.T., 3/1/17, at 12. Agent Sproat testified that in November 2014, he had phone conversations and text message communications with Rivera concerning heroin purchases. *Id.* at 239-45. Rivera objected, claiming the Commonwealth had to provide the original text messages to him. The prosecutor explained that the text messages might have been memorialized in investigative reports but that the original text messages may not be available. *Id.* at 246. Agent Sproat explained that he turned in his prior work phone, which contained the text messages in question, in order to receive another work phone, but did not take photographs of text messages with Rivera on the first work phone. *Id.* at 248. The Commonwealth then removed the text messages from the first work phone. *Id.* at 6-7. When the trial court asked if a phone company could retrieve the deleted text messages, Agent Sproat conceded the Commonwealth's actions rendered the first phone permanently unavailable. *Id.* at 7-9. He explained that the Commonwealth removed the text messages because the phone contained confidential information, including information

from other cases, but that he copied the text messages *verbatim* in his investigative reports. *Id.* at 10-12. The trial court concluded that the Commonwealth did not act in bad faith by removing the text messages from the phone, and that Agent Sproat's testimony concerning text messages was permissible under Pa.R.E. 1004.[3] *Id.* at 20.

During the post-trial evidentiary hearing, Agent Sproat explained that he did not photograph the text messages on this phone because of security issues. Agent Sproat added that his work phone did not change often, so he believed he would continue to have access to his text messages. He did not turn in his first work phone intending for the text messages to be deleted. N.T., 5/5/17, at 3-42.

*Fifth*, the Commonwealth failed to disclose Appellant Rivera's inculpatory statement before Agent Sproat's testimony at trial. Agent Sproat testified that on April 16, 2015, he had a phone conversation with Rivera in which Rivera agreed to sell heroin on April 19, 2015. N.T., 3/1/17, at 171-72. On April 19, 2015, Agent Sproat learned that Appellant Cooper-Reid would make the sale, not Rivera. *Id.* at 172-79. Agent Sproat wrote a report that the controlled purchase on April 19, 2015 was arranged on April 16, 2015, but the report did not mention that the April 16, 2015 conversation was with

---

[3] Pa.R.E. 1004 provides in relevant part: "An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Pa.R.E. 1004(a).

Rivera. *Id.* at 188-200. The trial court concluded the Commonwealth committed a discovery violation by not informing Appellants prior to trial that Agent Sproat's conversation on April 16, 2015 was with Rivera. *Id.* at 188-204.

During the post-trial evidentiary hearing, Agent Sproat testified that he could recall the April 16, 2015 conversation without notes because it was a significant event in the case, and therefore he did not need to memorialize it in a report. He testified that he did not intentionally fail to mention in his April 19, 2015 report that the conversation was with Rivera.

The trial court denied Appellants' motion to bar retrial, reasoning that "nothing in the evidence presented to us, particularly the testimony of [Agent] Sproat, would suggest that the Commonwealth intended to keep [any] information from defense counsel." Order Denying Motion of Defendants to Bar Retrial, 5/8/17, at 2. The court continued:

> We find that neither the failure to clarify the contact between [Agent] Sproat and Rivera on the 16th nor the belated modification of a PowerPoint nor any of the other discovery violations amounted to a deliberate and intentional tactic to deny [Appellants] a fair trial. Clearly, [the prosecutor] and his witnesses **should have made a more diligent effort** to guarantee defense counsel had the information they believe was necessary. On the other hand, the sheer complexity of this case and the fact that the task force allowed [Appellants] to allegedly engage in nineteen (19) separate sales before making an arrest resulted in the accumulation of massive amounts of evidence which defense counsel understandably had difficulty assimilating. Nonetheless, we are not convinced that any alleged omissions or misstatements amounted to deliberate misconduct or a pattern of pervasive misconduct [that] would justify the dismissal of the

charges against [Appellants]. The appropriate remedy **for the negligence of the prosecution** is simply a new trial.

*Id.* at 2-3 (emphasis added).

The trial court presides as factfinder when the defendant moves to bar retrial on the basis of prosecutorial misconduct, and we cannot disturb findings that are supported by the record. *Graham*, 109 A.3d at 736. The bolded language in the trial court's order above demonstrates that it found the Commonwealth's errors were negligent, not reckless or intentional. The record supports this finding. Agent Sproat's testimony during trial and the post-trial evidentiary hearing confirms that the alteration of the PowerPoint slide, deletion of text messages from his first work phone, and his failure to state in his report that his conversation on April 16, 2015 was with Appellant Rivera were inadvertent mistakes. Similarly, the Commonwealth's failure to disclose its intent to call Agent Sproat as an expert (a failure that did not prejudice Appellants since the trial court denied Agent Sproat permission to present expert testimony) or to turn over aerial photographs of Lock Haven prior to trial were slipshod errors, nothing more. Under *Kearns*, the Commonwealth's negligence does not provide a sufficient foundation for barring retrial on the basis of double jeopardy.

Our Supreme Court has directed us to review this case in light of *Johnson*. We see no resemblance between these cases. In *Johnson*, the Commonwealth committed "almost unimaginable" overreaching in a murder prosecution by (1) asserting the patently defective theory that a red baseball

cap contained both the defendant's blood and the victim's sweat and (2) ignoring evidence that demolished its claim about the red baseball cap (a black baseball cap worn by the victim that had a bullet hole and only contained the victim's blood). In the present case, the Commonwealth was guilty of a pattern of minor omissions, but not reckless and systematic overreaching. An order denying retrial under these circumstances is far too harsh a remedy.

In short, the Commonwealth's errors in this case were negligent rather than reckless or intentional. Thus, **Kearns** governs this case instead of **Smith** or **Johnson**—and under **Kearns**, the proper remedy for the Commonwealth's negligence was not to bar retrial but to order a new trial. The trial court properly denied Appellants' claim of double jeopardy.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Nichols concurs in the result.

Judge Ransom did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2020